Belknap,
Oct. 4, 1927.

OSCAR G. PIPER *v.* MEREDITH.

*Owen & Veazey*, for the plaintiff.

*Bertram Blaisdell* and *Frank P. Tilton*, for the defendant.

BRANCH, J. 1. In his petition the plaintiff takes the position that he is not taxable because he has only a leasehold interest in the premises. If his lease ran for a definite term of years, the question thus presented would not be free from doubt. In *Hampton &c. Co.* v. *Hampton*, 77 N. H. 373, and *Granite &c. Co.* v. *Hampton*, 76 N. H. 1, it seems to have been assumed without question by the parties and the court that the interest of a lessee under a long term lease is taxable. But in *Donovan* v. *Haverhill*, 247 Mass. 69, it was held that "an assessment may not be laid upon leases as an interest in the land which is to be assessed, nor upon the owner of such interest in his position as lessee."

Whether the rule in New Hampshire differs from that which prevails in Massachusetts and other jurisdictions (3 Cooley, Tax. (4th ed.), s. 1069), because of the statutory provisions that "any separate interest in land, . . . shall be taken to be real estate" (P. S., c. 61, s. 21; P. L., c. 66, s. 38) and separately appraised upon request (P. S., c. 58, s. 2; P. L., c. 63, s. 2), is a question which was touched upon but not decided in *Granite &c. Co.* v. *Hampton*, *supra*, and which need not be decided in the present case, for in regard to tenancies for life, defeasible estates and perpetual leaseholds, different considerations apply.

For the purpose of taxation, it is immaterial who is the ultimate owner of the fee. Title is not the test of taxability. "Real and personal property shall be taxed to the person claiming the same, or to the person who is in the possession and actual occupancy thereof, if such person will consent to be taxed for the same." P. S., c. 56, s. 14; P. L., c. 61, s. 10. "A tenant for life, being either landlord and collector of the rent (which includes the tax of the remainder as well as the tax of the life estate), or occupier of the land, is taxed for the land, and not merely for his life estate. *Peirce* v. *Burroughs*, 58 N. H. 302, 304; *Deraismes* v. *Deraismes*, 72 N. Y. 154, 158. A holder of a defeasible title having the income or use of the land, may be taxable for the land, and not merely for his title. An ordinary land tax is an ordinary expense and burden of the land, and is naturally borne by those who have the benefit of the land. . . . The positions of rent-

paying tenants, tenants for life, and holders of defeasible titles, as tax-payers, are illustrations of the rule that title is not the test of taxability. Such persons, enjoying the product out of which the land tax may be taken, may be regarded, for the purpose of taxation, as the owners of the land, although the value of their title may be much less than the value of the land. The justice of taxing a piece of land to its tenant for life, who draws a great annual income from it, is apparent: and he is none the less taxable for the land when his term has so nearly expired as to have no substantial value. He is the owner for the purpose of taxation, though not for every other purpose. The plaintiff's first proposition, that one can be taxed only for what he owns, is at variance with the natural law by which the ordinary taxes, like other ordinary expenses of land, are chargeable upon its rents and profits, and eventually fall upon the occupier, who may be a tenant for life, or a tenant at will." *Morrison* v. *Manchester*, 58 N. H. 538, 557.

In the present case the plaintiff holds not only a perpetual lease of the first story of the town hall building, but the reversion of the fee in the land in case the town commits a breach of the conditions contained in its deed from Sturtevant. His covenant to keep the foundations and walls in repair imposes upon him nothing more than a property owner's ordinary burden of keeping up his buildings. The entire beneficial interest in the first story of the building belongs to him. Under these circumstances it is not illogical or unreasonable to hold that since he enjoys all benefits of ownership, he should bear an owner's share of the public expense.

In reality the plaintiff's estate is not a leasehold at all, for it is well settled law that a perpetual lease upon condition conveys to the lessee a determinable or base fee. "Every estate which may be of perpetual continuance is deemed to be a fee, and may come within the definition of Lord Coke, of a fee-simple absolute, conditional, qualified, or base fee." 1 Washb., Real Prop., s. 162. The propriety of taxing the holder of such an estate as the owner of the property is obvious, and has been uniformly recognized by the courts in almost every jurisdiction where the question has arisen. 37 Cyc., Taxation, 790; Note to *Penick* v. *Atkinson*, 46 L. R. A. (N. s.) 284; 16 R. C. L., Landlord and Tenant, s. 99; *Wells* v. *Savannah*, 181 U. S. 531; s. c. 87 Ga. 397. The plaintiff, therefore, cannot escape taxation for that part of the town hall building which he holds under lease, because of the nature of his estate.

2. The next position of the plaintiff is that the property in question

always has been, and is today, exempt from taxation under the statutes. It is argued that in 1876 when the Sturtevant lease was executed, no tax could have been levied upon the property because the law then exempted the real estate of towns, other than town poor-farms, from taxation, G. S., c. 49, s. 2; and that this situation was not altered by the change in the law which now limits the non-taxable real estate of towns to that which is used for public purposes. P. S., c. 55, s. 2; P. L., c. 60, s. 5. The argument in support of the last proposition is, that since, under the covenants of the lease, the plaintiff is bound to relieve the town from the expense of maintaining the first story of the building, he in this way makes "an addition to the contents of the town's treasury" and hence that the leased property is "used" for public purposes.

A sufficient answer to this argument is to be found in the authorities cited in the defendant's brief, which establish the rule that "the exemption from taxation enjoyed by governmental bodies with respect to lands owned by them, does not extend to the leasehold interest of a tenant in those lands." Notes to *Chicago* v. *University of Chicago*, 23 A. L. R. 244, 248. It should be further noted, however, that the second branch of the foregoing argument is fallacious, because it proves too much. By parity of reasoning it would follow that any property owned by a municipal corporation which brings money into its treasury is "used for public purposes." This is not the law. The fact that income from municipally owned property finds its way into the public treasury, does not establish the public character of the use. *Keene* v. *Roxbury*, 81 N. H. 332; *Whitefield* v. *Dalton*, 80 N. H. 93; *Newport* v. *Unity*, 68 N. H. 587. That portion of the town hall building which is leased to the plaintiff is in his exclusive possession and is used solely by him. Only in a secondary sense of the word can it be said that the town "uses" the first story of the building at all. There is nothing to indicate that the legislature had this meaning of the word in mind when the statute was passed. On the contrary, the statute obviously has reference to town property actually employed by public officials in the discharge of governmental functions, such as court houses, police stations, fire stations, or town property provided for the use of the general public, such as parks, schools, libraries and hospitals. The situation in the present case is much like that which has arisen under statutes exempting from taxation the property of charitable and educational institutions used for the purposes of such organizations. In these cases it has been uniformly held that the use must be exclusively for the objects mentioned or there is no

exemption. *Young Men's Christian Ass'n* v. *Keene,* 70 N. H. 223; *New London* v. *Academy,* 69 N. H. 443; *Alton &c. Ass'n* v. *Alton,* 69 N. H. 311; *Phillips Exeter Academy* v. *Exeter,* 58 N. H. 306. In *Young Men's Christian Ass'n* v. *Keene, supra,* the association's building was exempted "to the extent that it is used for the purposes of the association." Laws 1893, c. 259. Two stores in the building were rented and it was held that a tax was legally laid upon that much of the property. In the opinion it is said: "that portion of the building which is let to tenants is not used for the purposes of the association, but to obtain an income. . . . The use made of the income does not entitle the plaintiffs to an exemption of the property from which the income is derived. Nor is the fact that the use incidentally promotes the objects of the association of controlling effect. The use must be exclusively for those objects, or there is no exemption." The contention of the plaintiff that he is exempt from taxation because the property would be exempt in the hands of the town, must therefore be overruled.

3. The last position taken by the plaintiff is that there was a contract between Sturtevant and the town "that Sturtevant and his successors should occupy the premises forever without the payment of taxes."

It is by no means clear that the plaintiff is in a position to raise this issue at the present time. The petition contains no allegation of the existence of such a contract, and no agreement in regard to the payment of taxes appears in the documents before us. If there was a collateral contract of exemption such as the plaintiff now claims, it seems clear that it must have been antecedent to or contemporaneous with the execution of the lease. Whether evidence of such an agreement could properly be received would depend upon the question whether the lease was intended by the parties to be a complete memorial of all their agreements with reference to the town hall building. 4 Wig. Ev., s. 2430; *Steinfield* v. *Monadnock Mills,* 81 N. H. 152, and cases cited. The lease is evidently a carefully prepared document which specifies the obligations of the parties in great detail. It was preceded by two other writings, a contract and a deed, both of which provided for the execution of the lease and purported to state its essential terms. This course of conduct indicates a disposition on the part of Sturtevant and the representatives of the town to reduce their agreements to writing, and it is hardly reasonable to suppose that they three times omitted from the written evidences of their agreements such an important item as an under-

taking on the part of the town to relieve Sturtevant and his successors from the burden of taxes. Under these circumstances it would not be unreasonable to conclude that the parties intended to integrate all their agreements in the lease. In such a situation the "parol evidence rule" would necessitate the exclusion of any evidence offered for the purpose of proving an additional contract of exemption. 4 Wig. Ev., s. 2425; *Kidd* v. *Company*, 74 N. H. 160, 186.

If upon the agreed facts a finding could be made that the lease was not intended to embody all the agreements of the parties, so that evidence of a collateral agreement in regard to the payment of taxes could properly be received, the record before us would present only a single question of law for this court to consider, viz., whether there is any evidence from which the existence of such a contract could be found. If it should be decided that evidentiary facts appear in the case from which the existence of a contract of exemption could be inferred, the question whether such an inference ought to be drawn would be one of fact for the trial court to decide.

Furthermore, proof of such a contract as the plaintiff sets up would not entitle him to the relief for which he prays in this petition, *i. e.,* that the tax assessed against him be abated. The contract, if proved, would be illegal and void, for a town cannot, by grant or stipulation in a conveyance, exempt land from taxation. *Mack* v. *Jones*, 21 N. H. 393. "If this power were conceded to towns, and acted on generally, it would disturb the whole system of taxation imposed by law, and destroy that equality in the distribution of the public burdens which it has been a principal object with all the governments in this country to establish and secure. We are very clear, that the attempt of the town to grant this land a perpetual immunity from taxes was illegal and void." *Mack* v. *Jones, supra,* 396. The soundness of this rule has never been questioned. On the contrary, in *New London* v. *Colby Academy*, 69 N. H. 443, the case of *Mack* v. *Jones* was cited with approval, and in *Hampton &c. Co.* v. *Hampton, supra,* the existence of the rule was recognized and conceded. Only in case the alleged contract could be construed as an agreement by the town to repay any taxes assessed against the property, would the plaintiff be entitled to relief in an action of covenant or assumpsit. Such was the situation in *Hampton &c. Co.* v. *Hampton, supra.*

Nevertheless, in view of the possible doubt as to the admissibility of evidence of an additional contract susceptible of this construction it may be thought that in an action of assumpsit the plaintiff might recover judgment against the town for the amount of the tax which

he has paid. Such prolonged litigation should be avoided if possible, and it is understood that the parties in the present case desire to secure from this court a decision which will terminate the controversy. The question whether there is any evidence tending to prove the existence of a contract of exemption, has, therefore, been considered.

The plaintiff bases his argument for the existence of the contract upon three propositions, i.e. (1) that "it is commonly understood that the landlord pays the taxes and the tenant pays no taxes on the demised premises without some specific agreement to that end;" (2) that if the town had expected to collect taxes as well as to escape the burden of maintaining the first story of the town hall building, it would have so stipulated in the lease; (3) that the failure of the town to tax the plaintiff or his predecessors in title is explainable only upon the ground that there was such a contract.

The answer to the first of these arguments has been indicated in the first section of this opinion and it is sufficient to point out in this connection that as to life estates, perpetual leases and defeasible estates, there is no such common understanding as the plaintiff supposes. This being so, there is no force in the plaintiff's second argument that if the town expected to collect taxes it ought to have so stipulated in the lease. On the contrary, the logical conclusion to be drawn from the silence of the parties on the subject of the taxes would be, that if the plaintiff expected to secure exemption from taxation, contrary to the usual practice in such cases, he should have so stipulated in his lease.

The argument that the failure of the town to tax this property for nearly fifty years indicates the existence of a contract of exemption is inconclusive, because there appears to be another equally plausible explanation of the conduct of the town officials. They may well have had the impression, under which the plaintiff still labors, as indicated above, that since the town hall building was town property, it was wholly exempt from taxation, and that no one having rights in it could be taxed thereon. The plaintiff's case in this respect is not so strong as that of the plaintiff in *Wells* v. *Savannah*, *supra*, where the city of Savannah had, for more than one hundred years, abstained from taxing the holders of perpetual leases of lots belonging to the city. In that case, as in this one, it was argued that this course of conduct could be explained only by the existence of a contract of exemption, but the court declined to adopt this line of reasoning because there were other adequate explanations of the conduct of the city officials in the past. Since the conduct of the town is as

readily explainable upon a ground which does not aid the plaintiff as upon one which he suggests, and since it is agreed that there is no further evidence of any contract of exemption, it follows that there is no evidence from which the existence of such a contract could properly be found.

*Petition dismissed.*

All concurred.