Rockingham
No. 94-853

HAMPTON BEACH CASINO, INC. & a.

v.

TOWN OF HAMPTON

April 17, 1996

*Casassa & Ryan*, of Hampton (*John J. Ryan* on the brief and orally), for plaintiff Hampton Beach Casino, Inc.

*Loughlin & Wade*, of Portsmouth (*Peter J. Loughlin* and *Laura V. Games* on the brief, and *Mr. Loughlin* orally), for the defendant.

*McDonald's Corporation* filed no brief.

*Leb Company-New Hampshire Division* filed no brief.

HORTON, J. This case involves the question of whether the Superior Court (*McHugh*, J.) erred in ruling that the defendant, Town of Hampton (town), was precluded from assessing real property taxes on land owned by the plaintiffs, Hampton Beach Casino, Inc. (the Casino), McDonald's Corporation, and Leb Company-New Hampshire Division, because the town covenanted in a lease with the lessee and its successors and assigns not to tax the land or any part thereof during the term of the lease. We reverse and remand.

The parties stipulated to the following facts. On April 1, 1898, the town and the Hampton Beach Improvement Company (HBIC) entered into a ninety-nine-year lease of property owned by the town that now comprises the commercial and entertainment district on Hampton Beach. By entering into the lease, the town sought to encourage the development of this prime real estate. In furtherance of this goal, HBIC was charged in the lease with exercising its best efforts to sublease lots and bring taxable property into the town. In order to provide incentives for the development of the property, the town

covenant[ed] and agree[d] with the said lessee, its successors and assigns, that it [would] not tax said lands or any part thereof during the term of the lease, or if it [did] tax the same or any part of it, the amount of said tax [would] be paid by said lessor, or if paid by said lessee, its successors and assigns, shall be deducted from the annual rent.

In 1922, HBIC entered into a sublease with Hampton Casino Associates, which was scheduled to end, coinciding with the termination of HBIC's ninety-nine-year lease, on March 31, 1997. Hampton Casino Associates sold its interest in the sublease in 1976 to the Casino, one of the plaintiffs in the current action. The Casino, in turn, subleased a portion of its lease to Leb Company-Hampton Division d/b/a McDonald's of Hampton Beach, on behalf of McDonald's Corporation (McDonald's), the other plaintiffs in this action. Between 1982 and 1986, the town voted to sell its interest in the land directly to the tenants who owned the buildings on those lands. In 1987, the town deeded its interest in the parcel of land controlled by the Casino to the Casino. This deed expressly stated that the interest in the land was subject to HBIC's ninety-nine-year lease. The Casino deeded the parcel of land that McDonald's controlled to McDonald's in 1991 subject to HBIC's ninety-nine-year lease, the Casino's 1922 sublease, and the McDonald's sublease. Finally, HBIC and the Casino entered into a partial assignment of the ninety-nine-year lease, whereby HBIC transferred its interest in the parcel of land controlled by the Casino to the Casino. HBIC retained its obligations to the town under the ninety-nine-year lease, and the town continued to collect rent under the lease.

This appeal involves a dispute over the town's power to assess real estate taxes on the interest in the real property that the town sold to the Casino, a portion of which the Casino in turn sold to McDonald's. The tax, which the town began assessing in 1988, was levied on the "perceived 'residuary' real estate interests" owned by the Casino and McDonald's. The Casino filed a petition for abatement of the taxes for the years 1989 and 1991 and forward. McDonald's also filed a petition for an abatement for the years 1991 and forward. These cases were consolidated.

The trial court initially ruled that the town had the authority to assess taxes on the land, and that the lease provision was intended only to exempt the leasehold interests from taxation. This ruling was premised on the assumption that the town was no longer receiving any benefit from the original ninety-nine-year lease. After

a motion for reconsideration in which the plaintiffs pointed out that the town is still receiving rent under the original lease, the court reasoned that because the town was receiving benefit from the ninety-nine-year lease, the lease provision, which relieves HBIC, its assigns, and successors from responsibility for any tax burden, is still in effect. The court held that the town therefore was precluded by its agreement from taxing any interests in the land.

■ The trial court correctly concluded that in situations involving a lease for a term of years, real property taxes are assessed on the fee and not on the separate leasehold and reversionary interests. In *Kennard v. Manchester*, 68 N.H. 61, 36 A. 553 (1894), we held:

> The division of the title of the property into two parts, — a term for years and the reversion in fee, — did not affect the extent or manner of its taxation. After the division, as before, the property was taxable as real estate, at its full and true value in money, to the persons claiming it or to the persons in possession, if they would consent.

*Id.* at 61, 36 A. at 553 (quotation omitted). In other words, absent an agreement between the lessor and lessee to the contrary, the lessor as owner of the fee interest in the property pays taxes on the full value of the land as if the leasehold interest did not exist. *See Gowen v. Swain*, 90 N.H. 383, 387-88, 10 A.2d 249, 252 (1939). *See generally* 71 AM. JUR. 2D *State and Local Taxation* § 208 (1973). A leasehold for a term of years is not taxable to the lessee because it is considered personal property. *See Indian Head Nat'l Bank v. City of Portsmouth*, 117 N.H. 954, 955, 379 A.2d 1270, 1272 (1977); 49 AM. JUR. 2D *Landlord and Tenant* § 446 (1995).

■ While the trial court correctly concluded that the fee, and not the reversion, was the taxable interest, it erred in concluding that the town had covenanted not to tax the fee. The lease covenant that relieves HBIC, its assigns, and successors from the tax burden on "the lands or any part thereof" can only be deemed a promise not to collect taxes on the leasehold interests and not a promise not to relieve the owner of the fee from the burden of taxation.

"A lease is a form of contract that is construed in accordance with the standard rules of contract interpretation." *Echo Consulting Services v. North Conway Bank*, 140 N.H. 566, 569, 669 A.2d 227, 230 (1995).

> The meaning of a contract is ultimately a matter for this court to decide. In reviewing a contract, we will give its language the interpretation that best reflects the parties' intentions. In interpreting a contract, we will consider the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole.

*Appeal of Dell*, 140 N.H. 484, 488, 668 A.2d 1024, 1029 (1995) (citation and quotation omitted).

■ Although now well settled, the taxability of a lease for years was unclear at the time the lease in question was signed. *See Piper v. Meredith*, 83 N.H. 107, 109, 139 A. 294, 295 (1927). The issue, in fact, was not decided until nearly eighty years after HBIC and the town entered into the lease at issue in this case. *See Indian Head Nat'l Bank*, 117 N.H. at 955, 379 A.2d at 1272.

■ The tenant's responsibility to pay taxes on a leasehold from a public body was also unsettled at the time the lease in this case was signed. *See id.* at 956, 379 A.2d at 1272 (Bois, J., dissenting in part). At common law, the leasehold interest of a party who leases property from a State or municipal body may be taxed to the lessee as real property. *See* Annotation, *Comment Note: Availability of Tax Exemption to Property Held on Lease from Exempt Owner*, 54 A.L.R.3D 402, 519-34 (1973). In New Hampshire, however, leaseholds for a term of years of land from a public body are not taxable to the lessee. *See Indian Head Nat'l Bank*, 117 N.H. at 955, 379 A.2d at 1271-72; *see also id.* at 956, 379 A.2d at 1272 (Bois, J., dissenting in part).

■■ Finally, under the common law, a lessee of real property pursuant to a lease in perpetuity or a lease for years renewable forever is considered the owner of the real property for the purposes of taxation and bears the burden of paying real property taxes. 71 AM. JUR. 2D *State and Local Taxation* § 209 (1973). "Where the lease is in perpetuity or for a long term, the property leased may be taxable to the lessee, on the theory that such a lease gives the lessee a chattel real substantially equivalent to a conveyance of the fee . . . ." 84 C.J.S. *Taxation* § 95 (1954) (footnotes omitted). Similarly, under New Hampshire law, "[t]itle is not the test of taxability." *Piper*, 83 N.H. at 109, 139 A. at 295. Under a lease in perpetuity, the lessee as virtual owner of the fee must pay taxes on the land. *Id.* at 110, 139 A. at 296. In this case, the lessees'

interest is not for a term of years approaching perpetuity, *see Montgomery v. Town of Branford*, 142 A. 574, 575-76 (Conn. 1928) (sixty-four-year lease does not create a fee transfer but 999-year lease does); *cf. IP Timberlands Operating v. Denmiss*, 657 So. 2d 282, 291 (La. Ct. App.) (nonrenewable ninety-nine-year lease is not a perpetual lease), *writ denied*, 661 So. 2d 1348 (La. 1995), and is not renewable indefinitely. We therefore do not consider the ninety-nine-year leasehold interest to represent full ownership of the property. At the time the lease was entered into, however, it was unclear whether a ninety-nine-year lease was a lease in perpetuity taxable to the lessee. *See Railroad v. The State*, 60 N.H. 133, 139 (1880) (lease for 999 years may be taxed to either lessor or lessee).

■ Given the lack of clarity in the law at the time of this lease, we conclude that the town and HBIC were covenanting to eliminate the uncertainty of the town's authority to assess taxes on the *leasehold*, not to limit the town's ability to collect taxes on the fee. We note that we have considered this same lease in the past and concluded that "[t]he tax covenants in question viewed in the context of the lease as a whole, were intended, along with the covenant for rent, to establish a fixed price to be paid by [HBIC] to the town for the use of this land." *Hampton v. Hampton Beach Improvement Co.*, 107 N.H. 89, 98, 218 A.2d 442, 449 (1966); *see Hampton etc. Co. v. Hampton*, 77 N.H. 373, 375, 92 A. 549, 549 (1914). We do not believe, however, that the meaning we ascribe today to the tax covenant is inconsistent with our past interpretation of the lease viewed as a whole. Moreover, it would be illogical for the town to covenant not to tax an interest that it owned in fee simple at the time the lease was signed. HBIC or its successors and assigns would receive no benefit from such a promise. There was no guarantee at the time the lease was signed that the town would convey its interest in the property to HBIC or the sublessees. The town might have sold its interest in the property to a third party, in which case HBIC and its successors and assigns would receive no conceivable benefit from the town's promise in the lease to forego taxing a third-party owner of the fee interest. The fact that the town has conveyed the fee to HBIC's assigns, that is, the sublessees of the ninety-nine-year lease, does not alter the situation.

That the town still collects rent under the lease does not affect our conclusion that the town transferred its fee interest to the plaintiffs. The right to collect future rents is not an inseparable incident to the ownership of the property. *See M'Murphy v. Minot*, 4 N.H. 251,

254-55 (1827). The lessor may transfer his interest in the property and retain the right to rent. *See id. See generally* 49 AM. JUR. 2D *Landlord and Tenant* § 696 (1995). Whether the town properly reserved the right to rent under the ninety-nine-year lease is not before us.

"In this state, taxation must be authorized by statute." *Indian Head Nat'l Bank,* 117 N.H. at 955, 379 A.2d at 1271. RSA 72:6 (1991) requires that "[a]ll real estate, whether improved or unimproved, shall be taxed except as otherwise provided." Towns are granted the power to tax separate interests in land. *See* RSA 75:2 (1991). The legislature has defined the terms "land" and "real estate" very broadly, to "include lands, tenements, and hereditaments, and all rights thereto and interests therein." RSA 21:21, I (1988); *see* RSA 80:18 (1991) ("Any separate interest in land, and any buildings, timber, or wood standing or growing on land owned by another person, shall be taken to be real estate, within the meaning of this chapter."). This statutory language authorizes the taxation of the fee interest currently owned by the Casino and McDonald's.

■■ The town covenanted in the lease to relieve the owners of the leasehold interests from taxation. It was not legally entitled to tax these interests in the first place. *Indian Head Nat'l Bank,* 117 N.H. at 955, 379 A.2d at 1272. That does not mean that this promise in the lease was meaningless. As noted above, this provision was intended to eliminate the uncertainty of the law in 1898 with regard to the taxability of the leasehold interests. *See also Hampton,* 107 N.H. at 98, 218 A.2d at 449. The town's promise to the lessee, its successors, and assigns not to tax the leasehold interests does not limit the town's authority to tax the fee. We note that the parties have stipulated that for the tax years subject to the abatement proceedings in this case, the town has assessed tax on the "perceived 'residuary' real estate interests." This is a substantially smaller interest than the town is authorized to tax. *See* RSA 72:6. The parties still dispute the actual valuation of the interests at issue in this case. Accordingly, we reverse the decision of the trial court and remand this case for further proceedings consistent with this opinion.

*Reversed and remanded.*

BROCK, C.J., did not sit; the others concurred.