Sullivan
No. 96-706

GERTRUDE HOLL d/b/a B.J. BRICKER'S RESTAURANT

v.

CLAREMONT ASSOCIATES & a.

May 20, 1999

*Law Offices of Wm Howard Dunn*, of Claremont (*Carl D. Hanson* on the brief and orally), for the plaintiff.

*Devine, Millimet & Branch, P.A.*, of Manchester (*Donald A. Burns* and *Kevin G. Collimore* on the brief, and *Mr. Burns* orally), for the defendants.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Manchester (*Ralph F. Holmes* and *William S. Hewitt, Jr.* on the brief, and *Mr. Holmes* orally), for the intervenor, J & B Foods, Inc.

PER CURIAM. The defendants, Claremont Associates and Rosen Associates Management Corporation, appeal from a Superior Court (*Morrill*, J.) order enjoining their tenant, J & B Foods, Inc. (J & B), from making sales that the plaintiff, Gertrude Holl d/b/a B.J. Bricker's Restaurant, claims are prohibited by the terms of a cross-easement agreement. We reverse.

The trial court made the following findings. The plaintiff owns and operates B.J. Bricker's Restaurant (B.J. Bricker's) in Claremont. Defendant Claremont Associates owns the property, known as the Claremont Plaza Shopping Center (Claremont Plaza), adjacent to B.J. Bricker's. Defendant Rosen Associates is an agent of Claremont Associates and manages the Claremont Plaza.

The properties of the plaintiff and Claremont Associates are subject to a recorded cross-easement agreement. Paragraph 9 of the agreement restricts Claremont Associates' use of the property by providing: "Developers agree that during the term hereof no restaurant or public eating establishment or place for the sale of food for consumption on the premises shall be permitted or maintained on [Claremont Plaza]."

In 1996, Claremont Associates entered into a lease with J & B for the operation of a "Little Caesar's," offering pizza take-out and delivery service. The lease restricted the service to off-premises consumption. After Little Caesar's began selling pizza, whole and in individual servings, and related products to the public, the plaintiff brought an action for temporary, preliminary, and permanent injunctive relief, claiming that the defendants had violated the terms of the cross-easement agreement. The superior court entered a permanent order enjoining the defendants and J & B from "selling individual servings of food product which may be consumed on the property." The defendants appealed.

Since the trial court issued its order, Little Caesar's has ceased operations at the Claremont Plaza. At oral argument, however, the defendants argued that the case is not moot because the injunction

continues and may be asserted against any Claremont Plaza tenant. We agree. *See Knox Leasing v. Turner*, 132 N.H. 68, 70, 562 A.2d 168, 170 (1989).

The defendants argue that the Little Caesar's operation did not violate the agreement and, therefore, no basis for the injunction existed. The plaintiff responds that the trial court acted within its discretion when it issued the injunction upon finding the intent of the original covenanting parties was to bar the sale of food designed to be consumed on the property. "[T]he granting of an injunction is a matter within the sound discretion of the Court exercised upon a consideration of all the circumstances of each case and controlled by established principles of equity." *UniFirst Corp. v. City of Nashua*, 130 N.H. 11, 14, 533 A.2d 372, 374 (1987) (quotation and ellipsis omitted). On appeal, "[w]e will uphold the issuance of an injunction absent an error of law, abuse of discretion, or clearly erroneous findings of fact." *Thompson v. N.H. Bd. of Medicine*, 143 N.H. 107, 109, 719 A.2d 609, 611 (1998) (quotation omitted).

■ The proper interpretation of this agreement, like other contracts, is a question of law for this court. *See Baker v. McCarthy*, 122 N.H. 171, 174-75, 443 A.2d 138, 140 (1982). "In interpreting a contract, our inquiry focuses on the intent of the contracting parties at the time of the agreement." *R. Zoppo Co. v. City of Dover*, 124 N.H. 666, 671, 475 A.2d 12, 15 (1984). We will give the language of a written contract "the interpretation that best reflects the parties' intentions." *Id.* Further, "we will consider the situation of the parties at the time of their agreement and the object that was intended thereby, together with all the provisions of their agreement taken as a whole." *Hampton Beach Casino v. Town of Hampton*, 140 N.H. 785, 789, 674 A.2d 979, 981 (1996) (quotation omitted). "When there is a question of fact concerning what was intended by certain terms within a contract, the dispute is to be resolved by the trier of fact, whose findings will be upheld if supported by the evidence." *R. Zoppo Co.*, 124 N.H. at 671, 475 A.2d at 16.

Paragraph 8 of the agreement describes the plaintiff's predecessor's business as "a public eating establishment for service to the public of on-premises food consumption, also a so-called 'take-out' service window." Accordingly, we hold that the language of Paragraphs 8 and 9 taken as a whole bars the service of food for consumption on the premises.

The parties dispute whether the term "premises" is intended to include the entire property or intended to be limited to the

defendants' building. The trial court found that by including the phrase "place for the sale of food for consumption on the premises," the parties intended to include the parking lot as part of the premises. This finding is supported by the evidence. Most notably, Paul Ransom, a signatory of the cross-easement agreement, testified that premises "included the entire lot, building and land."

The trial court found that "Little Caesar's clearly does not sell food for consumption on the Little Caesar's premises" and that "neither the [defendants] nor Little Caesar's have done anything to invite, encourage or facilitate the consumption of food in the parking lot"; rather, the parking lot's "only purpose is functional — to provide parking spaces." Despite these findings, the trial court enjoined the defendant "from selling individual servings of food product which may be consumed on the property," based on its finding that "the intent of [the] provision was to bar the sale of food that [was] designed to be consumed on the property." Consequently, the trial court looked to the serving size of the prepared food to determine whether the Little Caesar's operation violated the agreement.

■ The plaintiff did not offer any evidence suggesting that Little Caesar's sold any pizza, whole or in individual servings, to be consumed on the premises. The court received into evidence a sample of the individual serving package, as well as a photograph depicting Little Caesar's customers in the parking lot consuming their pizza purchased as a whole pie. The individual servings are packaged in a manner that allows for transporting away from the store, and the evidence does not demonstrate that it is more likely that individual servings will be consumed on the premises. Further, the court found that "very few" customers consumed their purchases in the parking lot. The evidence and the trial court's findings do not support the court's conclusion that the serving size of the prepared food determined whether it was offered for sale for consumption on or off the premises. Without inviting, encouraging, or facilitating on-premises consumption, Little Caesar's could not reasonably control where its customers chose to consume their pizza, whether sold whole or in individual servings. Based on the evidence, the court erred when it found Little Caesar's operation violated the agreement. Therefore, no basis for the injunction existed, and the trial court abused its discretion in enjoining the

sale of individual servings of food product. In light of our decision, we need not address the other issues raised by the defendants.

*Reversed.*

All concurred.