Rockingham
No. 6949

ALLENE FELDER & *a.* v. CITY OF PORTSMOUTH

August 26, 1974

*Rockingham County Community Action Program (Mr. Michael J. Daly* orally under Supreme Court Rule 23) and *Boynton, Waldron, Dill & Aeschliman* for the plaintiffs.

*Peter J. Loughlin,* by brief and orally, for the defendant.

*Devine, Millimet, Stahl & Branch* and *Silas Little III (Mr. Little* orally) for Jeffrey A. Kosow and Lawrence Gelf, amici curiae.

Kenison, C.J. Petition for declaratory judgment challenging the constitutionality of the Homeowners' Exemption law (RSA 72:44-60 (Supp. 1973)). The case was submitted on an agreed statement of facts to Master *Leonard C. Hardwick,* Esquire, who recommended that the matter be transferred to this court without ruling. The Trial Court *(Morris,* J.) approved the recommendation and transferred the following questions of law:

"A. Do the plaintiffs have standing to raise the questions sought to be transferred?

"B. Does chapter 482 of the 1973 New Hampshire Laws (RSA 72:44 - 72:60) as adopted by the City of Portsmouth violate the New Hampshire Constitution, Part 2, Articles 5 and 6 which require that all property taxes levied be proportionate, uniform and reasonable; and Part 1, Article 12 which forbids any tax statute which requires any taxpayer to pay more than his fair share of the tax burden?

"C. Does Chapter 482 of the 1973 New Hampshire laws (RSA 72:44 - 72:60) as adopted by the City of Portsmouth cause disproportionate and unequal treatment of residential properties in violation of the guarantees of due process and equal protection of the law under the fourteenth amendment to the United States Constitution."

The 1973 session of the New Hampshire legislature enacted the Homeowners' Exemption law (Laws 1973, ch. 482) which was designed to grant property tax relief to owner-occupied residences for the purpose of fostering homeownership on the part of our citizens. Laws 1973, 482:1. The statute, which authorizes any city or town to adopt its provisions by majority vote, entitles "[e]very person who has legal or beneficial title in equity to real property including a mobile home [and a condominium parcel] in this state and who resides thereon and in good faith makes the same his permanent home ... to an exemption of five thousand dollars of equalized assessed valuation ...; providing, however, that in no case shall the remaining equalized assessed valuation be less than eight thousand dollars on any homestead." RSA 72:45 (Supp. 1973). It allows a double exemption of $10,000 for taxpayers over the age of sixty-five years; however it specifically renders inapplicable other tax exemptions for the elderly (RSA 72:39-

43 (Supp. 1973)) in any city or town which adopts its provisions. RSA 72:47 and 60 (Supp. 1973). Since its enactment the law has been adopted by referendum in twenty cities and towns, including Portsmouth.

The parties agree that approximately one-half of the dwelling units in Portsmouth will qualify for the exemption, thus resulting in a reduction of the tax base of the city and an increase in its 1974 tax rate over its 1973 rate ($38.50 per $1000 of assessed valuation) by a projected ten percent. The net result of the adoption of the law will be to give tax relief to certain residential property owners while imposing heavier tax burdens on other property owners and on tenants, who will be forced to pay higher rents as a consequence. The law will benefit those homeowners whose property has an assessed value which, after the exemptions have been subtracted, is greater than $8,000, but less than the value at which the negative effect of the ten percent rate increase offsets the positive effect of the exemptions (approximately $55,000 for a $5,000 exemption and $60,000 for a $10,000 exemption). Within this class it will favor those taxpayers owning property which has an assessed value of $13,000 or above if the owner is under sixty-five years of age or $18,000 or above if the owner is over sixty-five years of age because they can take the full, as opposed to a partial, exemption. Moreover, because of the resulting increase in tax rate, the taxpayers receiving the greatest relief under the law will be those persons who own the more moderately priced homes in the full exemption category. The owners of the more expensive homes in the full exemption category or those of homes entitled to only partial exemptions will receive proportionately less benefit, and the owners of homes having an assessed value of less than $8,000 or greater than $55,000 will pay higher taxes. See N.H.S. Jour. 2211-15 (1973).

The objection to the plaintiffs' standing has been waived, and the first issue before this court is whether the Homeowners' Exemption law is valid under our State constitution. "It is settled law that taxes upon property or estates must be laid at a common rate ... but that a general exemption from a property tax may be permitted without violation of the constitution. 'Inequality of taxes laid is forbidden, but

inequality caused by taxing some property and not taxing other is permitted' . . . . In the selective process of classifying certain property for taxation and exempting other property the Legislature has a wide discretion which will be sustained 'provided just reasons exist for the selection made.'" *Opinion of the Justices,* 112 N.H. 32, 34, 287 A.2d 756, 757 (1972); *see Opinion of the Justices,* 95 N.H. 548, 65 A.2d 700 (1949); W. Newhouse, Jr., Constitutional Uniformity and Equality in State Taxation 189-91 (1959). In order for a classification to be valid, it "must reasonably promote some proper object of public welfare or interest and may not be sustained when the selection and grouping is so arbitrary as to serve no useful purpose of a public nature." *Opinion of the Justices,* 113 N.H. 87, 89, 302 A.2d 112, 114 (1973).

Our decision as to whether the Homeowners' Exemption law reasonably promotes a useful purpose of a public nature is important because the legislature has expressed considerable interest in alleviating the property tax burden of homeowners in recent years. *See* H.B. 70 (1972 Spec. Sess.); H.B. 383 (1971 Sess.). In *Opinion of the Justices,* 113 N.H. 87, 89, 302 A.2d 112, 114 (1973), we addressed the question of whether a "Local Relief Tax Fund" proposed by the Governor to return state funds to homeowners, *as such,* was constitutional and concluded that it failed to pass constitutional muster because it was not limited to assisting persons who were unable to meet their financial obligations "'by reason of lack of means of their own.'" In that case, however, we were concerned that this fund, displaying overtones of public welfare, had no criteria by which to limit its assistance to those homeowners in financial straits. The Homeowners' Exemption law, on the other hand, principally functions to promote the public interest in preserving owner-occupied residential property because the legislative history suggests that the drafters were hopeful that the homeowners' exemption "would fight for the people who had to leave their homes to go to apartments due to high property taxes." (N.H.S. Jour. 2214 (1973)). This interest parallels the goal of various federal programs to provide "a decent home and suitable living environment for every American family" (Act of July 15, 1949, ch. 338, § 2, 63 Stat. 413) and of State homestead exemption

laws to secure a permanent home for the members of a family by immunizing their property from the claims of general creditors. 2 R. Powell, The Law of Real Property 406.1-2 (1973); A. LaFrance, M. Schroeder, R. Bennett, and W. Boyd, Law of the Poor 104 (1973); *see* Weinstein, *Housing Subsidies: An Overview*, 51 J. Urban L. 723 (1974); Note, *A Federal Strategy for Neighborhood Rehabilitation and Preservation*, 11 Harv. J. Legis. 509 (1974). A homeowner must necessarily make a commitment to the community in which he lives, thereby stabilizing its social structure and nurturing an attitude of care and concern for its environment, and we believe that the legislature could have reasonably found that a policy of fostering homeownership would enhance the quality of life in New Hampshire.

Tax relief is an appropriate vehicle by which to accomplish this goal, for statistics reveal that homeowners in this State pay a higher percentage of their income for property taxes than any other State in the nation. *See* Advisory Commission on Intergovernmental Relations, Finance Schools and Property Tax Relief — A State Responsibility 20-24 (1973). The impact of this fact is particularly significant when one stops to consider that "the property tax can . . . be characterized as an extremely regressive tax — one that is which falls most heavily on those with the least ability to pay and the greatest need for tax services." Zimmerman, *Tax Planning for Land Use Control*, 5 Urban Lawyer 639, 647 (1973); *see Opinion of the Justices*, 112 N.H. 32, 35, 287 A.2d 756, 758 (1972). Furthermore, the agreed facts indicate the tax burden is not fairly shared between homeowners and tenants because the average owner-occupied residential unit is taxed well in excess of the average tenant-occupied residential unit even though each on the average has approximately the same number of persons per unit. This distortion is caused by the fact that the assessed value of owner-occupied units is substantially higher than that of the rental units. The statute thus operates to readjust the inequities and provides just reasons for allowing a limited exemption to homeowners. *See* Freeman, *Tax Relief for the Homeowner*, 26 Nat'l Tax J. 485 (1973).

However, even though we hold that this law is directed

toward a legitimate public purpose, we are of the opinion that its requirement of a minimum $8,000 equalized assessed valuation discriminates against the low and moderate income homeowners. The legislative history shows that the rationale for the minimum valuation provision was to guarantee that "each homestead pays at least some taxes to the community and is not totally exempted." N.H.H.R. Jour. 1390 (1973). While this concern has a superficial appeal, there appears to be no viable reason for cutting off tax relief at an $8,000 valuation point or any other since the purpose of the law is to promote homeownership. The law undermines this purpose among the poor taxpayers owning property valued at less than $8,000 by increasing their taxes and causes special hardship to the elderly in this category by preventing them from taking advantage of other measures intended for their benefit. *See Opinion of the Justices*, 110 N.H. 206, 266 A.2d 111 (1970); *Opinion of the Justices,* 105 N.H. 22, 192 A.2d 22 (1963); Annots., 45 A.L.R.3d 1147, 1153 (1972); Note, *Real Property Tax Relief for the Elderly*, 7 U. Mich. J.L. Reform 388 (1974); Bendick, *Designing Circuit Breaker Tax Relief*, 27 Nat'l Tax. J. 19 (1974).

In our view the law is unconstitutional because the minimum valuation provision discriminates against the poor by unreasonably raising their taxes to finance tax relief for persons owning more expensive homes. This consequence is ironic because the legislative history suggests that the law's supporters believed that it would readjust the tax burden "upward from those who can least afford to pay and put it to a greater degree on those who can better afford to pay . . . ." N.H.S. Jour. 2212 (1973). It is apparent to us that other States providing tax relief to homeowners in the form of an exemption have avoided a minimum valuation cutoff to steer clear of this constitutional problem. *See* Code of Ala. tit. 51, § 15 (Supp. 1973); Fla. Const. art. VII, § 6; Ga. Const. of 1945, 1A Ga. Code Ann. § 2-5404 (1973); Haw. Rev. Stat. § 246-26 (Supp. 1973); Okla. Stat. tit. 68, § 2405 (1971). In addition to this problem, the $8,000 limitation also operates to prevent the valuation of homeowners' property on the same scale in violation of our constitutional requirement of uniformity by permitting some home-

owners to take full exemptions, others only partial exemptions and still others none at all. W. Newhouse, Jr., Constitutional Uniformity and Equality in State Taxation 190-91 (1959); *see Ainsworth v. Claremont,* 106 N.H. 85, 88, 205 A.2d 356, 358 (1964); *Brock v. Farmington,* 98 N.H. 275, 279, 98 A.2d 162, 164-65 (1953).

Accordingly, we hold that while the legislature may legitimately provide tax relief to the homeowners as a class, it may not arbitrarily make such relief contingent on property being valued in excess of some minimum figure because this scheme would favor the richer property owners at the expense of the poor and cause an unconstitutional disuniformity of taxation.

In view of this decision, we do not find it necessary to consider whether the Homeowners' Exemption law violates the due process and equal protection clauses of the Federal Constitution. However, for future reference, we would point out that the Supreme Court of the United States has consistently followed the policy of upholding state tax laws which discriminate in favor of a certain class "'if the discrimination is founded upon a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution." *Kahn v. Shevin,* 416 U.S. 351, 355 (1974). "Where taxation is concerned and no specific federal right, apart from equal protection is imperilled, the states have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation." *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359 (1973).

*Case dismissed.*

GRIMES, J., did not sit; the others concurred.