Grafton
No. 81-361

THE TOWN OF FRANCONIA

v.

GRANITE STATE CONCESSIONS, INC.

July 14, 1982

*John M. A. Rolli*, of Littleton, by brief and orally, for the plaintiff.

*David B. Shepatin*, of Littleton, by brief and orally, for the defendant.

BATCHELDER, J. This interlocutory transfer from the Grafton County Superior Court (*Johnson*, J.) presents the following two questions:

> "(a) Is the defendant subject to real estate taxation pursuant to RSA ch. 72 upon buildings owned by the State of New Hampshire in Franconia State Park?
>
> (b) Do the provisions of RSA 72:73 violate the Constitutions of the United States and the State of New Hampshire?"

We answer the first question in the affirmative and the second question in the negative, for the reasons which follow. The plaintiff brought this action to collect taxes for the tax year beginning April 1, 1978, levied on certain buildings located in Franconia Notch State Park. The defendant operates a food service concession in various parts of these buildings which are owned by the State. His right to operate is pursuant to a State park concession contract.

Although real estate and personal property belonging to the State has historically been exempt from taxation by local governmental units, in 1975 the legislature provided that the tax-exempt status of governmental property extended only to those properties that were not "used or occupied by other than the state or a city, town, school district or village district. . . ." Laws 1975, 482:2 (current version at RSA 72:23 (Supp. 1981)). This provision was modified by adding language to specifically provide that the exemption did not apply when the use or occupation of the property was pursuant to a "lease or other agreement the terms of which provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property." Laws 1977, 600:83 (current version at RSA 72:23 (Supp. 1981)).

In the case before us, the defendant entered into an agreement with the State of New Hampshire on September 16, 1976, for a three-year term beginning November 1, 1976. The defendant was granted the exclusive right to operate food concessions and sell certain merchandise in buildings owned by the State at Franconia Notch State Park. Under the agreement, the State allowed the concessionnaire the use of "such buildings, refreshment stands, shelters, rooms and built-in locations as [were then] being used for the purpose of providing the services described in the agreement." The defendant's occupancy was not in all instances exclusive of agents and employees of the State. Although the agreement was not in the form of the ordinary conveyance of a leasehold, certain provisions contained in it created a quasi-lessee status in the defendant. These provisions required that the defendant insure the occupied portions of the premises against public liability, assume responsibility for other than ordinary wear, provide custodial services, and permit inspection of the premises by the State at all times.

The agreement also contained a provision concerning the payment of taxes. Clause 26a states:

> "*Provision for Property Tax:* The Concessionaire agrees to hold the state harmless with respect to and agrees to pay in addition to other payments provided hereunder the full amount of taxes levied against the premises subject to this agreement as a consequence of the application of Chapter 482, Laws of 1975, which provides for taxation of certain state properties used or occupied by persons or entities other than the state. In the event the Concessionaire shares a larger parcel of land with lessees or

other concessionaires, he shall be obligated to pay only his pro rata share of any such taxes."

We conclude that the concession contract under which the defendant operated was an agreement as contemplated by the statute; and because the agreement provided for the payment of taxes, the defendant is liable for the 1978 assessment.

This case can be distinguished from *Indian Head Nat'l Bank v. City of Portsmouth,* 117 N.H. 954, 379 A.2d 1270 (1977). There, we held that a leasehold interest in federal land could not be taxed because no State statute authorized the tax. *Id.* at 955, 379 A.2d at 1271–72. Here, a State statute authorizes the taxation of real and personal property when it is leased from the State or other political subdivision. Laws 1977, 600:83 (current version at RSA 72:23 (Supp. 1981)).

The argument that the town cannot tax the portions of the building that the defendant uses is foreclosed by our prior cases. *Indian Head Nat'l Bank v. City of Portsmouth,* 117 N.H. at 955, 379 A.2d at 1271; *Lin-Wood Dev. Corp. v. Town of Lincoln,* 117 N.H. 709, 710–11, 378 A.2d 741, 742 (1977); *King Ridge, Inc. v. Sutton,* 115 N.H. 294, 299, 340 A.2d 106, 110 (1975).

The argument raised by the defendant concerning the constitutionality of the statute in question is not persuasive. Rather than singling out the defendant, the statute puts him in the same position as all other businesses, which must, either directly or indirectly, pay property taxes. Landlords generally calculate property taxes into the rent they will charge. Additionally, the lessee's obligation to pay taxes, or to pay taxes in excess of those assessed as of the date of the transfer of the interest in property, is a commonly accepted provision in a lease. The statutes in question do not create a special tax classification of those who deal with the State or other governmental units. *See Opinion of the Justices,* 118 N.H. 343, 345, 386 A.2d 1273, 1275 (1978); *Opinion of the Justices,* 114 N.H. 174, 177, 317 A.2d 568, 570 (1974).

*Remanded.*

All concurred.