Board of Tax and Land Appeals
No. 96-595

APPEAL OF BEATRICE REID & a.

(New Hampshire Board of Tax and Land Appeals)

December 29, 1998

*Gottesman and Hollis P.A.*, of Nashua (*Morgan A. Hollis* on the brief and orally), for the petitioners.

*Drescher & Dokmo, P.A.*, of Milford (*William R. Drescher* on the brief and orally), for the respondent, Town of Brookline.

JOHNSON, J. The petitioners, a group of twenty-nine lessees of tracts of land surrounding Melendy Pond in Brookline, appeal the decision of the New Hampshire Board of Tax and Land Appeals (board) granting only a partial abatement of their 1993 property taxes. We vacate and remand.

The following facts were adduced at a hearing before the board and through documents provided to the board. The petitioners lease small tracts of land from the Melendy Pond Authority (authority) on which they have constructed small seasonal residential dwellings. The land was formerly owned by the Town of Brookline (town), which deeded the land to the authority in 1970. The town created the authority in 1951 "to plan and lease . . . property in the Melendy Pond Tract" and collect rents that would be used to maintain the development. The petitioners executed form leases, the terms of which vary only with respect to the length of the lease term and renewal option and the amount of rent. The leases grant the lessees the right to construct "camps and similar structures" on the land, subject to the approval of the authority. The leases provide that the buildings constructed are "for recreational use only" and cannot be used as permanent residences. The leases further provide that "no person shall acquire a settlement for welfare purposes, educational purposes, or other rights and entitlements within the Town of Brookline." As of March 1996, the length of the individual leases ranged from six to twenty years, and the majority of the leases provided that each lessee had a right to renew for an additional twenty-year term. No renewal term exceeded twenty years.

Until 1993, the town taxed the petitioners for the assessed value of the buildings only. That year, however, the town added $40,000 to the total assessed value of each property to represent the benefit of leasing land in close proximity to Melendy Pond (the amenity value). The petitioners unsuccessfully applied to the town for an abatement and subsequently appealed that decision to the board. *See* RSA 76:16-a, I (1991) (amended 1994, 1995). The town eventually granted a partial abatement in 1995, reducing the amenity value attributed to each lease to $20,000. The petitioners, however, continued to object to the additional assessment.

The petitioners moved for a directed verdict, arguing in part that because

> the leased premises constitute property exempt from taxation . . ., is property not owned by the lessees, and is property for which the petitioners have not consented to be taxed, the value of any portion of such property imputed to the appraised value of the petitioners' personal property for tax purposes is improper.

The board held that the leasehold interests are taxable, but granted partial abatements based on recommendations made by Gary Roberge, an assessment consultant to the town. This appeal followed.

On appeal, the petitioners contend that the board erred in finding that their leasehold interests were taxable, or, in the alternative, in applying the adjusted assessments recommended by the town's consultant. "Our standard of review for appeals from the board provides that the petitioner has the burden of showing that the board's decision is clearly unreasonable or unlawful, and all findings of the board upon all questions of fact shall be deemed to be prima facie lawful and reasonable." *Appeal of Kiwanis Club of Hudson*, 140 N.H. 92, 93, 663 A.2d 90, 91 (1995) (quotation, brackets, and ellipses omitted); *see* RSA 541:13 (1997); RSA 71-B:12 (1991). Further, we will set aside an order of the board if we find that it misapprehended or misapplied the law. *Kiwanis Club of Hudson*, 140 N.H. at 94, 663 A.2d at 91.

The petitioners maintain that their leasehold interests are not taxable because the terms of the leases are not sufficient to create a taxable property interest. Pursuant to RSA 73:10 (1991), "[r]eal and personal property shall be taxed to the person claiming the same, or to the person who is in the possession and actual occupancy thereof, if such person will consent to be taxed." Accordingly, the statute allows a person to be taxed even if the person does not

possess actual title to the property provided that such person consents to the taxation. *See Quimby v. Quimby,* 118 N.H. 907, 910, 395 A.2d 1247, 1249 (1978). "[I]t is immaterial who is the ultimate owner of the fee. Title is not the test of taxability." *Lin-Wood Dev. Corp. v. Town of Lincoln,* 117 N.H. 709, 711, 378 A.2d 741, 742 (1977) (quotation omitted). However,

> in situations involving a lease for a term of years, real property taxes are assessed on the fee and not on the separate leasehold and reversionary interests. . . . [A]bsent an agreement between the lessor and lessee to the contrary, the lessor as owner of the fee interest in the property pays taxes on the full value of the land as if the leasehold interest did not exist.

*Hampton Beach Casino v. Town of Hampton,* 140 N.H. 785, 788, 674 A.2d 979, 981 (1996). Perpetual leases, on the other hand, are taxable to the lessee because the lessee "enjoys all benefits of ownership, [and therefore] . . . should bear an owner's share of the public expense." *Piper v. Meredith,* 83 N.H. 107, 110, 139 A. 294, 296 (1927).

Accordingly, the leasehold interests in this case are taxable if the leases are either perpetual, *see Indian Head Nat'l Bank v. City of Portsmouth,* 117 N.H. 954, 955, 379 A.2d 1270, 1272 (1977), or "renewable indefinitely," *Hampton Beach Casino,* 140 N.H. at 790, 674 A.2d at 982, or if the petitioners agreed to pay taxes on the value of the land, *see id.* at 788, 674 A.2d at 981.

The petitioners contend that the lease terms do not create virtual ownership in the lessees. Because leases are a type of contract, we review their meaning in accordance with well established rules of contract interpretation. *See id.* "[T]he interpretation of a contract, including whether a contract term is ambiguous, is ultimately a question of law for this court to decide." *Holden Eng'g and Surveying v. Pembroke Rd. Realty Trust,* 137 N.H. 393, 395, 628 A.2d 260, 262 (1993). "[A]bsent fraud, duress, mutual mistake, or ambiguity, we must restrict our search for the parties' intent to the words of the contract." *Parkhurst v. Gibson (Parkhurst),* 133 N.H. 57, 62, 573 A.2d 454, 457 (1990). Accordingly, we will reverse the determination of the fact finder where, although the terms of the agreement are unambiguous, the fact finder has improperly relied on extrinsic evidence in reaching a determination contrary to the unambiguous language of the agreement. *See Holden Eng'g and Surveying,* 137 N.H. at 395-96, 628 A.2d at 262; *Logic Assoc's, Inc.*

*v. Time Share Corp.*, 124 N.H. 565, 572, 474 A.2d 1006, 1010 (1984). Here, the board apparently relied solely on extrinsic evidence in determining that "[t]he evidence was clear that since the [1951] creation of the Melendy Pond Authority, leases have been renewed for lengthy periods and would continue to be renewed indefinitely."

■ The lease term itself, however, is unambiguous, and grants the lessee the right to renew for one additional term of years. The form lease provides:

> RENEWAL : The Lessee shall have a right to renew the within lease for an additional term of _____ years at such rental as the parties may agree upon at the time of said renewal, said rent to be based upon the then existing rent, and the then existing cost of labor, insurance and maintenance incurred by the Lessor in maintaining the area.

While the length of the renewal term varies from lease to lease, as of March 1996, no renewal term exceeded twenty years. The leases neither provide for additional renewal terms, nor guarantee that the lessee will have the option to renew the lease beyond the finite period set forth in the renewal clause. Accordingly, we find that by its terms, each lease is not renewable indefinitely, but limited to a term of years. We also hold that a twenty-year renewal option does not qualify a lease as perpetual and thus taxable as a virtual ownership interest in land. *See Hampton Beach Casino*, 140 N.H. at 790, 674 A.2d at 983 (ninety-nine-year lease of municipal land "is not for a term of years approaching perpetuity" taxable to the lessee).

■ Further, none of the leases contain a provision indicating that the lessees agreed to pay property taxes on the underlying value of the leasehold. *Cf. HEA Realty v. City of Nashua*, 136 N.H. 695, 696, 621 A.2d 440, 441 (1993); *Town of Franconia v. Granite State Concessions*, 122 N.H. 684, 686-87, 449 A.2d 1202, 1203 (1982). Accordingly, because the parties did not consent to pay property taxes on the underlying leasehold, *see* RSA 73:10; *LSP Assoc. v. Town of Gilford*, 142 N.H. 369, 376, 702 A.2d 795, 799 (1997), we hold that the board erred in concluding that the petitioners' leasehold interests were taxable.

The board also ruled that the petitioners' leasehold interests were taxable under RSA 72:23, I (1991 & Supp. 1998). It should be noted, however, that paragraph I of the statute was amended in 1979, *see* Laws 1979, 182:1, and in 1993, *see* Laws 1993, 195:1. Thus, because the petitioners' individual leases were signed between 1978 and 1995, different versions of the statute apply. Except as noted below,

however, the pertinent provisions in effect for each lease did not differ in any significant manner. The current version of RSA 72:23, I, provides in pertinent part:

> The following real estate and personal property shall, unless otherwise provided by statute, be exempt from taxation:
>
> I. (a) Lands and the buildings and structures thereon and therein and the personal property owned by the state, cities, towns, school districts, and village districts unless said real or personal property is used or occupied by other than the state or a city, town, school district or village district under a lease or other agreement the terms of which provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property. . . .
>
> (b) All leases and other agreements, the terms of which provide for the use or occupation by others of real or personal property owned by the state or a city, town, school district, or village district, entered into after July 1, 1979, shall provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property . . . .

The 1993 amendment further provided that "[a]ll such leases and agreements entered into on or after January 1, 1994, shall clearly state the lessee's obligations regarding the payment of both current and potential real and personal property taxes, and shall also state whether the lessee has an obligation to pay real and personal property taxes on structures or improvements added by the lessee." *See* Laws 1993, 195:1.

We also note that the board's decision was based on the assumption that it would "treat the Authority as if it were the Town" for purposes of its decision. In their motion for reconsideration, the petitioners did not contest whether the authority is a "town" for purposes of RSA 72:23. Accordingly, we will assume for purposes of this appeal that the underlying land is town-owned. *See* RSA 541:4 (1997); *cf. Appeal of Richards*, 134 N.H. 148, 154, 590 A.2d 586, 590, *cert. denied*, 502 U.S. 899 (1991).

We hold that the board erred in relying on RSA 72:23, I, to find that the amenity value of the leaseholds was taxable. This court is the final arbiter of the meaning of a statute. *See Linteau v. Gauthier*, 142 N.H. 460, 461, 703 A.2d 266, 267 (1997). We begin by looking to the words of the statute itself, ascribing to those words

their plain meaning where possible. *See Cheever v. Southern N.H. Regional Med. Ctr.*, 141 N.H. 589, 590-91, 688 A.2d 565, 567 (1997). "[A]bsent formal legislative history, intent [of a tax exemption statute] must be gleaned from the plain language of the statute." *Wolfeboro Camp School v. Town of Wolfeboro*, 138 N.H. 496, 499, 642 A.2d 928, 930 (1994) (quotation omitted).

"In this state, taxation must be authorized by statute." *Indian Head Nat'l Bank*, 117 N.H. at 955, 379 A.2d at 1271. Although leaseholds for a term of years are considered personalty, not realty, *see Hampton Beach Casino*, 140 N.H. at 788, 674 A.2d at 981, our legislature has the authority "to make any type of property realty for purposes of taxation." *King Ridge, Inc. v. Sutton*, 115 N.H. 294, 299, 340 A.2d 106, 110 (1975). In *Town of Franconia v. Granite State Concessions*, 122 N.H. at 687, 449 A.2d at 1202-03, we recognized that RSA 72:23 authorizes taxation of real or personal property leased from the State. Although the property in that case was considered leased from the State, we held that it was taxable "because the agreement provided for the payment of taxes." *Id*; *see* RSA 72:23, I. In *HEA Realty v. City of Nashua*, 136 N.H. at 697, 621 A.2d at 441, we reviewed the plain language of RSA 72:23, I, and concluded that "[t]he statute simply requires that property owned by the city is used or occupied under a lease or other agreement that provides for the payment of properly assessed taxes." We declined, however, to reach the issue of whether the City of Nashua was entitled to collect property taxes on the leased property. *Id.*

"Basic statutory construction rules require that all of the words of a statute must be given effect and that the legislature is presumed not to have used superfluous or redundant words." *Appeal of Derry Educ. Assoc.*, 138 N.H. 69, 71, 635 A.2d 465, 467 (1993) (quotation omitted). Accordingly, we look to the plain meaning of RSA 72:23, I, and conclude that in order for leaseholds for a term of years to be taxable under RSA 72:23, the lease agreement with the town must include a provision for the payment of property taxes. Further, the provision that the terms of leases between a public body and private lessee contain a provision for the payment of "properly assessed real and personal property taxes by the party using or occupying said property," *see* RSA 72:23, I(a), is consistent with the well-settled rule that leaseholds for a term of years are taxable if the lessee consents to be taxed. *See LSP Assoc.*, 142 N.H. at 376, 702 A.2d at 799; *cf. Hampton Beach Casino*, 140 N.H. at 788, 674 A.2d at 981.

■ Although the board specifically rejected a plain reading of RSA 72:23, stating that "such a construction would be . . . incon-

sistent with the legislature's intent," we must, in the absence of ambiguity and formal legislative history, *see In re Estate of Martin*, 125 N.H. 690, 691, 484 A.2d 1183, 1184 (1984), derive legislative intent from the statute as written. *Petition of Walker*, 138 N.H. 471, 474, 641 A.2d 1021, 1025 (1994). Our review of the plain language of RSA 72:23, I, reveals that it contains both an enabling provision that simply allows municipalities to collect tax revenues on land that is otherwise tax exempt when it is leased to third parties, and a tax provision that ensures that the lessees are aware of, and consent to, taxation of their leasehold. Accordingly, given that the board found, and the record supports, *see* RSA 541:13, that the leases do not include the tax provision required by RSA 72:23, I, we hold that the petitioners' leaseholds are not taxable.

Additionally, we reject the town's argument that committee notes of comments made by the bill's proponents regarding a 1979 amendment to the statute demonstrate that RSA 72:23 requires lessees of public property to be taxed on their leasehold interests. That amendment merely added enforcement language to assist municipalities in collecting taxes from lessees who failed to pay property taxes pursuant to a lease that contained a provision for taxes. *See* Laws 1979, 182:1. We caution against "imputing too much weight to comments of proponents of bills offered in legislative committee hearings." *Martin*, 125 N.H. at 692, 484 A.2d at 1184. Here, the comments advanced by the town were those of a representative of the New Hampshire Tax Collectors' Association who urged the legislature to adopt penalties against lessors for non-payment of duly assessed real and personal property taxes. This hardly supports a finding that the statute *requires* that all lessees pay taxes on leaseholds of property owned by municipalities. Rather, it merely requires that the agreed upon tax obligations of the parties are memorialized in the lease. Because the issue is not before us, however, we express no opinion as to the validity of leases that do not include a provision providing for the payment of properly assessed taxes as required by the enforcement provision of RSA 72:23, I(b).

The board also reasoned that a plain reading of RSA 72:23 would allow towns to exempt otherwise taxable property by agreement, which would be inconsistent with a municipality's power to grant tax exemptions. The board correctly noted that "[i]f a municipality were to attempt to exempt property, *not otherwise* exempted from taxation by a legislative act, the agreement would be illegal and void." (Emphasis added.) *See Piper*, 83 N.H. at 113, 139 A. at 297. What the board and the town fail to appreciate, however, is that

under RSA 72:23, the leaseholds in question are not otherwise taxable because the town failed to include a tax provision in the lease. Therefore, the town did not "exempt" the petitioners from taxation but merely failed to follow the dictates of the enabling provision of RSA 72:23.

■ The board and the town contend that "to read RSA 72:23 I as allowing municipalities to contract away (by omission or otherwise) taxable property . . . would allow private interests to avoid taxation thereby shifting the tax burden onto other taxpayers without a public benefit" in violation of Part I, Article 12 of the New Hampshire Constitution. *See Felder v. Portsmouth*, 114 N.H. 573, 576-77, 324 A.2d 708, 711 (1974). We find this argument to be without merit. First, the tax burden is not shifted from one landowner to another in the case of leaseholds for a term of years because, as noted above, the lessees do not possess a taxable interest in land. *See Hampton Beach Casino*, 140 N.H. at 788, 674 A.2d at 982. RSA 72:23 does not exempt private taxpayers, but rather is a vehicle to broaden a town's tax base by providing a mechanism for taxing a previously non-taxable interest. The town argues that a plain reading of RSA 72:23 places the taxpayers of Brookline "in the untenable and unconstitutional position of having to tolerate a situation in which the [petitioners] were given the use of town owned waterfront on Melendy Pond for decades at a time, without the ability to recover taxes that should be applicable to the same." If the town's argument were correct then the exemption for the town, the owner of the fee, would be unconstitutional. This cannot be true since it has long been recognized that a statute exempting municipal property "creates no exemption, and is at most but a mere legislative recognition of a class of non-taxable property." *Canaan v. District*, 74 N.H. 517, 527, 70 A. 250, 252 (1908) (Walker, J.).

■ Having determined that the leasehold itself is not taxable, we must now determine whether the town may properly add a site amenity value to the depreciated cost of the buildings on each site. This issue is easily disposed of given our recent holding in *LSP Association v. Town of Gilford*, 142 N.H. at 376-77, 702 A.2d at 800, that site amenity charges could not be added to the depreciated value of owner-occupied buildings on leased property in a homeowners' association where the unit owners' interest was not equivalent to a taxable interest in land. Since we concluded above that the petitioners in this case did not possess sufficient ownership interests to justify a taxable interest in the leaseholds, it follows that a site amenity charge added to the depreciated cost of their

buildings based solely on the value of the underlying land is equally illegal.

Accordingly, we vacate the order granting only a partial abatement to the petitioners and remand for proceedings consistent with this opinion. In light of our holding that the underlying leaseholds were not taxable to the petitioners, we need not address the petitioners' challenge to the board's valuation of their respective leasehold interests. *Cf. Appeal of House Legislative Facilities Subcom.*, 141 N.H. 443, 449, 685 A.2d 910, 913 (1996).

*Vacated and remanded.*

HORTON, J., with whom BRODERICK, J., joined, dissented; the others concurred.

HORTON, J., dissenting: The majority is correct in holding that the leasehold interests held by the petitioners are not taxable to the petitioners and that all interests in the land involved are taxable to the fee owner. This mandates that the action of the board be vacated. I disagree with the majority's instruction on remand, for the reasons stated in my dissent in *LSP Association v. Town of Gilford*, 142 N.H. 369, 378-82, 702 A.2d 795, 801-03 (1997).

The camp buildings are assessed separately to the camp owner/lessees and must be assessed, pursuant to RSA 75:1 (1991), at full and true value. We have held that full and true value is the fair market value that would be arrived at between willing buyers and sellers. *Public Service Co. v. New Hampton*, 101 N.H. 142, 146, 136 A.2d 591, 595 (1957). The majority's instruction that the buildings be assessed at depreciated cost value is in conflict with the statutory mandate. The fair market value necessarily contains elements that do not exist in a depreciated cost formula. A rising real estate market on its own would drive the two formulas apart. All elements inherent in the building that go to its market value are the proper subjects of assessment. Admittedly, value unique to the land cannot be assessed to the building, but value elements shared by the land and the building must be apportioned between the two assessments on some reasonable basis. This assessment and apportionment must be done on each taxable unit. Absent some special circumstance, a flat amenity assessment, equal on all properties, will not be allowed.

I would remand for the board to determine the proper assessment for each taxable unit on the basis set forth above, and therefore, I again respectfully dissent.

BRODERICK, J., joins in the dissent.