NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough–southern judicial district
No. 2016-0305

SEGTEL, INC.

v.

CITY OF NASHUA

Argued: February 23, 2017
Opinion Issued: June 9, 2017

Cole Associates Civil Law, PLLC, of Lebanon (Carolyn K. Cole on the brief and orally), for the plaintiff.

Office of Corporation Counsel, of Nashua (Celia K. Leonard on the brief and orally), for the defendant.

HICKS, J. The defendant, the City of Nashua (City), appeals an order of the Superior Court (Temple, J.) granting summary judgment to the plaintiff, segTEL, Inc., on the basis that the City lacked the authority to tax the plaintiff's use of the City's rights of way. See RSA 72:6, :23 (2012). We affirm.

I.   Factual Background

The evidence submitted on summary judgment, viewed in a light most favorable to the City, see N. New England Tel. Operations v. City of Concord, 166 N.H. 653, 655 (2014), supports the following facts.  The City has issued licenses to certain utility providers — FairPoint Communications, Inc. and Public Service of New Hampshire (collectively, the utility providers) — that have placed poles and conduits over certain rights of way owned by the City.  The utility providers pay property tax to the City pursuant to a 2005 ordinance, which amended the terms of existing pole licenses to add the following language:  "In accordance with the requirements of RSA 72:23[,] I (b), the licensees(s) and any other entity nor [sic] or hereafter using or occupying municipal property pursuant to this license shall be responsible for the payment of, and shall pay, all properly assessed personal and real property taxes . . . ."  (Quotations omitted.)

The plaintiff is a telecommunications company that owns and/or operates a fiber optic cable network throughout New Hampshire — including within the City.  It does not own any poles or conduits within the City, and does not have its own license from the City authorizing its occupation of the City's rights of way.  Instead, pursuant to pole attachment agreements with the utility providers, the plaintiff remits a fee to the utility providers in exchange for the right to place its fiber optic cables on their poles and conduits.  It is undisputed that these pole attachment agreements do not require the plaintiff to pay property taxes assessed by the City.

Having become aware of the plaintiff's use of the utility providers' poles and conduits, the City in 2014 assessed the plaintiff property taxes of $1,507.94  for its use of the City's rights of way.  The plaintiff applied for an abatement, which the City denied.  Thereafter, the plaintiff brought this action in superior court, seeking: (1) a declaratory judgment that the City is not entitled to impose the tax; and (2) to strike the City's 2014 tax assessment.  The trial court granted summary judgment to the plaintiff, ruling that "[b]ecause [the plaintiff] has not entered into an agreement in which it consented to be taxed," the City could not lawfully tax the plaintiff for its use and occupation of the City's rights of way.  This appeal followed.

II.   Analysis

"When reviewing a trial court's grant of summary judgment, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party."  N. New England Tel. Operations, 166 N.H. at 655 (quotation omitted).  "If our review of the evidence does not reveal any genuine issue of material fact, and if the moving party is entitled to judgment as a matter of law, we will affirm the trial court's decision."

2

Id. (quotation omitted).  "We review the trial court's application of the law to the facts de novo."  Id. (quotation omitted).

On appeal, the City argues that it has statutory authority pursuant to RSA 72:6 and RSA 72:23 to tax the use and occupancy of its rights of way.  In opposition, the plaintiff argues that a statutory precondition for the assessment of taxes has not been met in the instant case.

Resolution of this issue requires that we engage in statutory interpretation.  The interpretation of a statute is a question of law, which we review de novo.  Bank of N.Y. Mellon v. Dowgiert, 169 N.H. 200, 204 (2016).  In matters of statutory interpretation, we are the final arbiters of the legislature's intent as expressed in the words of the statute considered as a whole.  Id.  In construing its meaning, we first examine the language found in the statute, and when possible, we ascribe the plain and ordinary meanings to the words used.  Id.  We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include.  Id.  We interpret statutory provisions in the context of the overall statutory scheme.  Id.  Absent an ambiguity, we will not look beyond the language of the statute to discern legislative intent.  Id.

"The assessment and collection of taxes must be based on legislative authority."  Signal Aviation Servs. v. City of Lebanon, 169 N.H. 162, 169 (2016) (quotation omitted).  RSA 72:6 provides that "[a]ll real estate, whether improved or unimproved, shall be taxed except as otherwise provided."  RSA 72:6.  RSA 72:23, I(a) exempts from taxation:

> Lands and the buildings and structures thereon and therein and the personal property owned by the state of New Hampshire or by a New Hampshire city, town, school district, or village district unless said real or personal property is used or occupied by other than the state or a city, town, school district, or village district under a lease or other agreement the terms of which provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property.

RSA 72:23, I(a).

The parties agree that RSA 72:23, I, governs the present dispute.  Indeed, we have recognized that a city's rights of way fall within the purview of the statute.  See Verizon New England v. City of Rochester, 151 N.H. 263, 268 (2004) (agreeing with trial court's determination that "[w]hatever interests the city . . . possesses in the rights of way, those interests are 'owned' for purposes of determining whether non-governmental entities that use or occupy those interests in the rights of way must pay properly assessed real estate taxes"

(brackets omitted)).  The parties, likewise, agree that the plaintiff "used or occupied" the City's rights of way.  Thus, our determination of the City's taxing authority under RSA 72:6 turns upon whether the plaintiff used or occupied the City's rights of way "under a lease or other agreement the terms of which provide for the payment of properly assessed real and personal property taxes by the party using or occupying said property," RSA 72:23, I(a).

The City argues that "the requirement for an 'agreement' under RSA 72:23, I[,] has been satisfied" by the pole licenses the City issued to the utility providers.  (Emphasis omitted.)  We disagree, and hold that, under the circumstances here, the City lacked the authority under RSA 72:6 and RSA 72:23, I, to tax the plaintiff's use of its rights of way.

By its plain language, RSA 72:23, I(a) provides that city-owned property is exempt from taxation unless: (1) that property is used or occupied by another "under a lease or other agreement"; and (2) "the terms of [that agreement] provide for" the payment of property taxes.  RSA 72:23, I(a).  We have previously recognized that pole licenses are "other agreement[s]" for the purposes of RSA 72:23, I(a), N.E. Tel. & Tel. Co. v. City of Rochester, 144 N.H. 118, 121 (1999), and here the utility providers' pole licenses provide for the payment of property taxes.  However, the plaintiff does not use and/or occupy the City's rights of way "under" the pole licenses.  See Webster's Third New International Dictionary 2487 (unabridged ed. 2002) (defining "under" in relevant part as "required by: in accordance with: bound by" (bolding omitted)).  Because the plaintiff is not a party to the pole licenses, it is not subject to their terms.  See Fleet Bank-NH v. Christy's Table, 141 N.H. 285, 290 (1996) (holding that defendants, who were not parties to contract in question, therefore could not be bound by its terms).  It, therefore, is not subject to the terms of the pole licenses providing for the payment of taxes.  This conclusion is consistent with our prior application of the statute.  See Appeal of Reid, 143 N.H. 246, 253 (1998) (holding that municipality could not assess tax against lessees of real properties where relevant leases did not provide for the payment of property taxes, and explaining that "the plain language of RSA 72:23, I, reveals that it contains . . . a tax provision that ensures that the lessees are aware of, and consent to, taxation of their leasehold"); HEA Realty v. City of Nashua, 136 N.H. 695, 697 (1993) (holding that the exception to RSA 72:23, I's tax exemption does not require that the municipality assessing the tax be party to the agreement providing for the payment of taxes).

The City attempts to distinguish Appeal of Reid.  To the extent it does so on the basis that Reid involved the taxation of leaseholds, as opposed to the taxation of property used or occupied pursuant to a license,  we find this argument unpersuasive.  Although Appeal of Reid involved the taxation of leaseholds, see Appeal of Reid, 143 N.H. at 247-48, for the purposes of RSA 72:23, I, this is a distinction without a difference.  The City has not identified

4

any language in RSA 72:23, I, indicating that the statute applies differently to licenses from the way it does to leases.  Indeed, the plain language of the statute excepts both leased property and licensed property from the tax exemption under the same circumstances.  See RSA 72:23, I(a) (exempting property unless "lease or other agreement" provides for the payment of taxes). Further, to the extent that the City argues that Appeal of Reid is inapplicable because it considered whether a municipality was entitled to tax certain leaseholds pursuant to RSA 73:10 (2012), we disagree.  Although we addressed the municipality's taxing authority under RSA 73:10 in Appeal of Reid, we also addressed separately its taxing authority in light of the exception to tax exemption contained in RSA 72:23, I.  See Appeal of Reid, 143 N.H. at 250, 253.  Similarly, we need not address the City's argument that the trial court erroneously relied upon RSA 73:10 because, even if it did, its decision is sustainable solely under our interpretation of RSA 72:23, I.

We construe the City's brief as arguing, in the alternative, that the plaintiff impliedly consented to be subject to the terms of the utility providers' pole licenses.  The City claims that the plaintiff's course of conduct demonstrates that "it was aware of and willing to accept the conditions imposed by the City and the legislature."  (Quotation and brackets omitted.)  It asserts that the plaintiff's consent to be subject to the terms of the pole licenses is evidenced by: (1) the plaintiff's knowledge "that it must have a license from the City to occupy City right[s] of way"; (2) the plaintiff's knowledge "of the conditions which are part of the . . . pole licenses" ; (3) the plaintiff's "place[ment] [of] its [fiber optic cable] in City right[s] of way"; and (4) the City's "allow[ance] . . . [of the plaintiff's use of] its right[s] of way without issu[ance] [of] a new license to [the plaintiff]."  We disagree.

Even if we were to accept the City's assertions, we cannot discern how such evidence supports a conclusion that the plaintiff consented to be subject to the terms of the utility providers' pole licenses.  Such a conclusion does not follow from the plaintiff's unlicensed attachments.  The plaintiff's knowledge that the utility providers agreed to pay property taxes is insufficient evidence of its consent to be taxed.  Likewise, the City's silent acquiescence cannot be construed as implied consent by the plaintiff to be subject to the terms of licenses issued to third parties.  Ultimately, as the plaintiff asserts in its brief, "[t]he fact that [the plaintiff] uses and occupies the City['s] right[s] of way for profit does not, by itself, create consent to be taxed."  (Quotation and citation omitted.)  Whether the absence of either a separate license to the plaintiff from the City or an agreement by the plaintiff to be bound by the utility providers' pole licenses  would, as the City suggests, render the plaintiff a "trespass[er]" with "no right to be in the City right[s] of way," is not an issue before us and does not affect our interpretation of RSA 72:23, I.

5

For the foregoing reasons, we conclude that the trial court did not err in ruling that "[b]ecause [the plaintiff] has not entered into an agreement in which it consented to be taxed," the City lacked the authority under RSA 72:6 and RSA 72:23, I, to tax the plaintiff's use of the City's rights of way.

Affirmed.

DALIANIS, C.J., and CONBOY and LYNN, JJ., concurred.