NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2020-0275


SHAW'S SUPERMARKETS, INC.

v.

TOWN OF WINDHAM

Argued: June 17, 2021
Opinion Issued: October 20, 2021


Alfano Law Office, PLLC, of Concord (John F. Hayes on the brief), and Mark Murphy Law Offices, LLC, of Norwood, Massachusetts (Mark F. Murphy on the brief and orally), for the plaintiff.


Beaumont & Campbell, Prof. Ass'n, of Salem (Bernard H. Campbell on the brief and orally), for the defendant.


MACDONALD, C.J. The defendant, the Town of Windham (Town), appeals an order of the Superior Court (Delker, J.) denying its motion to dismiss the tax abatement appeal of the plaintiff, Shaw's Supermarkets, Inc. (Shaw's), for lack of standing. The Town also appeals an order of the Superior Court (Honigberg, J.), issued after a two-day bench trial, granting Shaw's requested tax abatement. We affirm.

I. Facts

This case involves a challenge to a tax assessment of a 34.21-acre parcel of land in Windham owned by Route 111 Windham, LLC (Owner).  Part of the property is in Current Use.  See RSA ch. 79-A (2012 & Supp. 2020) (establishing Current Use tax program).

In 2004, the Owner entered into a ground lease with Shaw's for a "pad site" of approximately 1.5 acres.  The lease had a term of twenty years with an initial option for a ten-year extension, and four additional options, each for a five-year extension.  The lease, in relevant part, required Shaw's to pay the Owner its pro rata share of the real estate taxes assessed on the entire parcel, and the Owner was required to pay the taxes to the Town.  The responsibility of reimbursing the Owner for the taxes was divided proportionally among the tenants on the property.  However, because Shaw's was the only tenant in 2017, its pro rata share was 100%.  The lease also provided that, upon Shaw's written request, the Owner "shall commence . . . any proceeding . . . for abatement . . . of any assessment for Real Estate Taxes," or at Shaw's request, "shall permit [Shaw's] to do so in its [name] and/or [the Owner's name], provided that [Shaw's] makes payment of all Real Estate Taxes as required hereunder pending the determination of such conte[s]t."  If the Owner received a tax abatement, Shaw's was entitled to its pro rata share of the abatement.

As of April 1, 2017, the Town assessed the property at $10,887,150, and the median equalization ratio was 88.1%.  Thus, based on the Town's assessment, the equalized fair market value of the property was $12,357,718.  Shaw's was directed by the Owner to pay the property taxes directly to the Town, and it did.  Shaw's unsuccessfully applied to the Town's selectboard for a tax abatement and subsequently appealed to the superior court.  The Town moved to dismiss, arguing that Shaw's lacked standing to request a tax abatement on property it did not own.  The trial court denied the Town's motion.

A two-day bench trial followed.  Shaw's presented the expert testimony of B. Alec Jones, who is a certified general appraiser.  Jones appraised the property in 2019, and retroactively determined its value as of April 1, 2017.  Jones opined that, on that date, the property's highest and best use was "for continued use as a supermarket with limited excess or surplus land . . . capable of supporting future commercial development."  Jones further testified that the market value of the fee simple interest in the land not in Current Use was $9,500,000, and that the equalized fair market value of the entire property was $8,360,750.  He determined these values by using the cost, sales comparison, and income capitalization approaches.  The Town called no witnesses and offered no appraisal.  The trial court credited Jones' testimony and granted Shaw's requested abatement.  This appeal followed.

## II. Analysis

### A. Standing

The Town argues that Shaw's lacks standing to seek a tax abatement because, as a tenant, Shaw's is not liable for the taxes on the value of the land unless it agreed to pay them — something, the Town contends, Shaw's had not agreed to do. See Appeal of Reid, 143 N.H. 246, 249 (1998). In other words, the Town contends that Shaw's lacks standing because it does not have a taxable interest in the property. See id.

As an initial matter, notwithstanding the Town's argument, Reid does not apply here. In that case, we determined only whether a municipality had authority under RSA 73:10 to levy a tax on a leasehold interest. Id. (observing that leasehold is taxable only if lease is perpetual, renewable indefinitely, or if tenant agrees to pay taxes on the land); see also RSA 73:10 (2012). We did not address the issue of whether a tenant had standing to seek a tax abatement. See Reid, 143 N.H. at 249.

As relevant here, RSA 76:17 provides that "any person aggrieved" by the selectboard's neglect or refusal to abate a tax in accordance with RSA 76:16, I(b) may appeal the decision to the superior court. RSA 76:17 (Supp. 2020). In the context of a tax abatement appeal, a "person aggrieved" is the person who has paid the allegedly disproportionate tax, i.e., the taxpayer. See, e.g., Appeal of Thermo-Fisher Scientific, 160 N.H. 670, 673 (2010) (quotation omitted).

This case is similar to Thermo-Fisher. In that case, we held that a parent company had standing to petition for a tax abatement because, even though one of its subsidiaries owned the property, it paid the disproportionate tax on the subsidiary's behalf. Id. at 671, 673. Here, there is no dispute that Shaw's actually paid the allegedly disproportionate tax to the Town on the Owner's behalf. Indeed, the Town concedes that Shaw's paid the tax with its own check. Additionally, under the terms of the lease, and because Shaw's was the only tenant, Shaw's would have been required to reimburse the Owner for 100% of the tax paid if the Owner had made the payment itself; conversely, Shaw's would have been entitled to receive 100% of any tax abatement the Owner received. Thus, as a practical matter, a disproportionate tax assessment is an injury to Shaw's because Shaw's is responsible for paying the amount assessed, and Shaw's will receive the benefit of any abatement.

Under these circumstances, Shaw's is no less aggrieved than the petitioner in Thermo-Fisher. See id. at 673. A disproportionate assessment of land and buildings is an injury to the Owner, and because Shaw's paid the allegedly disproportionate tax on the Owner's behalf, an injury to Shaw's. Id. It is immaterial to our analysis that Shaw's does not own the property. See id.

Accordingly, we conclude that Shaw's has standing to appeal the Town's denial of its tax abatement request. In light of this conclusion, the issue of standing warrants no further discussion.

### B. Property Valuation

To succeed on its abatement claim, Shaw's has the burden of proving by a preponderance of the evidence that it is paying more than its proportional share of taxes. Porter v. Town of Sanbornton, 150 N.H. 363, 367 (2003). To show disproportionality, Shaw's must establish that the property for which it pays taxes is assessed at a higher percentage of fair market value than the percentage at which property is generally assessed in the town. Id. at 368. Generally speaking, fair market value refers to the "price which in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy, taking into account all considerations that fairly might be brought forward and reasonably given substantial weight in such bargaining." Ventas Realty Ltd. P'ship v. City of Dover, 172 N.H. 752, 755 (2020) (quotation omitted). The determination of fair market value is a question of fact. Id.

We will uphold the trial court's factual findings unless they lack evidentiary support or are legally erroneous. Id. "[T]he credibility of an appraisal is a question of fact that the trial court must decide based upon the evidence presented in a given case." N. New England Tel. Operations v. Town of Acworth, 173 N.H. 660, 678 (2020). "[T]he trial court is in the best position to determine whether an appraisal presents an accurate opinion of market value." Id. As the trier of fact, the trial court may accept or reject any portion of the evidence as it finds proper, including that of expert witnesses. Ventas, 172 N.H. at 755. We do not decide whether we would have ruled differently than the trial court, but rather, whether a reasonable person could have reached the same decision as the trial court based on the same evidence. Id. Accordingly, we defer to the trial court's judgment in resolving conflicts in the testimony, measuring the credibility of witnesses, and determining the weight to be given evidence. Id.

The trial court concluded that, based primarily on Jones' expert testimony and appraisal, Shaw's "carried its burden of proof to establish the value of the property." On appeal, the Town contends that "[t]he trial court erred in finding that [Shaw's] met its burden" because its expert's appraisal contained "a series of errors" that "have the cumulative effect to render the appraisal not sufficiently reliable." (Capitalization omitted.) Specifically, the Town argues that these errors invalidated the appraisal because they were each contrary to provisions of the Uniform Standards of Professional Appraisal Practice (USPAP). This argument ultimately rests on the premise that the appraisal could not deviate from the USPAP in any respect. However, the Town cites no authority to this effect, and we decline to adopt such a rule on this

record.  Based on our review of the evidence presented at trial, we conclude that a reasonable person could have reached the same conclusion as the trial court.

The Town contends that the trial court erred by crediting Jones' valuation of the property because Jones failed to: (1) identify the correct boundaries of the property; (2) consider a competitor's purchase of a comparable property only a short distance away and a few months before the effective date of the appraisal; and (3) include value related to Shaw's lease payments to the Owner.  The Town argues that, even if each of the alleged errors might "not [have] affect[ed] the results of the appraisal" individually, they "have the cumulative effect to render the appraisal not sufficiently reliable to meet [Shaw's] burden."

Questions of credibility are for the trial court to decide because it "is in the best position to determine whether an appraisal presents an accurate opinion of market value."  N. New England Tel. Operations, 173 N.H. at 678. Here, the trial court addressed each of the appraisal's alleged deviations from the USPAP and found that the appraisal was credible because Jones' trial testimony sufficiently responded to the Town's objections.  By asking us to conclude that the appraisal was not sufficiently reliable, the Town essentially asks us to second guess the trial court's determination of credibility.  That is not our role on appeal.  See Public Serv. Co. of N.H. v. Town of Bow, 170 N.H. 539, 542-43 (2018).

Based on our review of the evidence presented at trial, we conclude that a reasonable person could have reached the same conclusion of value as the trial court.  Accordingly, we affirm the trial court's decision to grant Shaw's requested abatement.

Affirmed.


HICKS, BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.