2011 VT 83

### State of Vermont v. Scott Smith

[27 A.3d 362]

Nos. 10-388 & 10-389

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed July 28, 2011

*Heather J. Brochu*, Franklin County Deputy State's Attorney, St. Albans, for Plaintiff-Appellant.

*Matthew F. Valerio*, Defender General, *Anna Saxman*, Deputy Defender General, and *Katie Polonsky*, Law Clerk (On the Brief), Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** At issue in this case is whether a boom lift — a motorized wheeled machine used to elevate and move workers around building sites — is a motor vehicle. Defendant was charged with driving under the influence (DUI) and driving with license suspended (DLS), and was served with a notice of intent to suspend his license as a result of an incident in which he moved a boom lift across a street while intoxicated. The trial court dismissed the charges, holding that defendant did not drive a "motor vehicle" as that term is used in the applicable statutes. The State appeals. We disagree with the trial court's construction of the statutes and accordingly reverse.

¶ 2. The material facts are undisputed. On May 28, 2010, at approximately 1:10 a.m., a police officer observed defendant drive a boom lift from a building site at the Franklin County Courthouse onto Lake Street in the City of St. Albans. Defendant worked at the building site and was responsible for moving the lift to a parking lot across the street to be refueled for the next day's work. He forgot to move the lift at the end of the workday and returned to the site at night to do so. Suspicions aroused, the officer approached defendant, smelled a strong odor of intoxicants on him, and noticed he was slurring his words and swaying back and forth while standing still. The officer performed standard field

sobriety tests and then transported defendant to the police department to be processed for suspicion of DUI. When he eventually took a breath test, defendant registered a blood alcohol concentration of 0.203. Defendant was charged with both driving under the influence in violation of 23 V.S.A. § 1201(a)(2) and driving with license suspended in violation of 23 V.S.A. § 674(b). He was served with a notice of intent to suspend his license pursuant to 23 V.S.A. § 1205. On September 15, 2010, defendant filed a motion to dismiss the charges pursuant to Vermont Rule of Criminal Procedure 12(d), claiming the State would be unable to establish that he operated a vehicle, an element of the offenses. The trial court agreed, dismissing the information and the civil suspension proceeding. The State appealed both dismissals.[*]

¶ 3. A boom lift is a machine with four wheels and a gas or oil fueled motor. The operator stands in the bucket at the end of the lift arm to engage the motor to travel to the precise position required for work. The maximum speed of movement of the boom lift is approximately five miles per hour. Once the machine is in the correct location, the lift arm operates by battery or hydraulic power. While in the bucket, the operator maneuvers the arm and the machine base using levers, joysticks, toggle switches, and buttons. A boom lift contains several safety measures including one that automatically stops it when a foot pedal is released and another that locks the machine in place when it is imbalanced.

¶ 4. Vermont's DUI statute prohibits a person from operating, attempting to operate, or being in actual physical control of "any vehicle on a highway" if he or she has an alcohol concentration of 0.08 or more. 23 V.S.A. § 1201(a)(1). Similarly, the civil suspension statute requires the Commissioner of Motor Vehicles to suspend the operator's license of a person who violates § 1201. *Id.* § 1205(a). The period of suspension depends upon whether there have been earlier suspensions. See *id.* § 1205(m). Under § 1200(6), a "[v]ehicle" for purposes of § 1201 is a "motor vehicle" as defined

---

[*] The State also appealed the dismissal of the DLS charge, a misdemeanor. The State cannot, however, appeal a final judgment in a misdemeanor case; the applicable statute restricts appeals in such cases to interlocutory appeals. 13 V.S.A. 7403(a); see *State v. Damn*, 167 Vt. 119, 127, 702 A.2d 105, 110 (1997); *State v. Saari*, 152 Vt. 510, 513, 568 A.2d 344, 347 (1989). At oral argument on appeal, the State acknowledged that it could not appeal the dismissal of the DLS charge. We interpret the State's acknowledgement as the withdrawal of the appeal of the DLS dismissal and do not consider that aspect of the original appeal.

in § 4 of Title 23, plus two additional types of vehicles not involved in this case. A "Motor vehicle" is defined by § 4(21) as "all vehicles propelled or drawn by power other than muscular power, except farm tractors, vehicles running only upon stationary rails or tracks, motorized highway building equipment, road making appliances, snowmobiles, or tracked vehicles or electric personal assistive mobility devices." Thus, the issue in this appeal is whether the boom lift is a motor vehicle under this definition. This is a legal question that we review de novo. *State v. Neisner*, 2010 VT 112, ¶ 11, 189 Vt. 160, 16 A.3d 597.

¶ 5. The State argues that the plain meaning of the definition in § 4(21) covers the boom lift. The boom lift can be driven from location to location by its gas or oil motor and is therefore "propelled or drawn by power other than muscular power." 23 V.S.A. § 4(21). Further, it does not fit under any of the exceptions in the statute. In contrast, defendant argues that a boom lift's design indicates it is not a motor vehicle because it is meant to be used primarily in a stationary position; it is not used for transportation and lacks common characteristics of motor vehicles such as a steering wheel and seat. Defendant argues that it is similar to many of the machines that are in the list of exceptions in the statute.

¶ 6. We are persuaded by the State's argument. The general definition of a motor vehicle in the statute includes a boom lift; no exception applies to this machine. In determining the scope of a statutory provision, we ask first whether the language of the provision is plain and unambiguous. If so, "we presume the Legislature intended the express meaning of that [statutory] language, and we enforce it according to its terms without resorting to statutory construction." *State v. Deyo*, 2006 VT 120, ¶ 14, 181 Vt. 89, 915 A.2d 249. The language "propelled or drawn by power other than muscular power," found in § 4(21), is plain and unambiguous. The facts clearly establish that a boom lift is powered by a motor rather than muscular power; therefore, it falls within this express definition of a motor vehicle. The statutory exceptions in § 4(21) are also plain and unambiguous. A boom lift is manifestly not a farm tractor, snowmobile, stationary rail vehicle, tracked vehicle, or electric personal assistive mobility device. Defendant's employer also testified that it is neither motorized building equipment nor a road-making appliance. We

need go no further than the plain meaning to hold that a boom lift is a vehicle for purposes of 23 V.S.A. § 1201(a)(2) and § 1205(a).

¶ 7. Defendant claims that the statutory language cannot be plain and unambiguous because the list of exceptions is not exhaustive. Defendant highlights the Legislature's revisions adding to the exceptions in § 4(21) as evidence that the list is not intended to be comprehensive, but rather is illustrative of an intent to exclude machines not created for the purpose of transportation of the operator and others. While defendant concedes that a boom lift does not fall within the explicit exceptions to the statutory definition of a motor vehicle, he argues that since the main utility of a boom lift is not transportation, it should be exempt from classification as a motor vehicle.

¶ 8. If the Legislature had intended that exceptions comparable to those explicitly mentioned be recognized, it could have drafted the language to make the list of exceptions nonexclusive. Without such an authorization, we have held that "[w]here express exceptions are made, the legal presumption is that the Legislature did not intend to save other cases from the operation of the statute. . . . [A]n exception in a statute amounts to an affirmation of the application of its provisions to all other cases not excepted, and excludes all other exceptions." *Fairbanks, Morse & Co. v. Comm'r of Taxes*, 114 Vt. 425, 431, 47 A.2d 123, 126 (1946); see also *Vermont Dev. Credit Corp. v. Kitchel*, 149 Vt. 421, 424-25, 544 A.2d 1165, 1167 (1988) (citing *Fairbanks* and declining to recognize an additional exception to listed statutory exceptions). The underlying principle is that if the Legislature made specific exceptions to the applicability of the provision and also wished to include another exception, it would have explicitly stated the additional exception. This rule of statutory construction creates a strong presumption for affirming the broad application of the statutory definition of a motor vehicle and denying the addition of implied exceptions to explicit exceptions.

¶ 9. This construction is reinforced by the inclusive language of the basic definition of motor vehicle. The statute uses the modifier "all" before "vehicles" indicating that the Legislature intended that the provision encompass all vehicles not specified in the listed exceptions. Cf. *Coburn v. Seda*, 677 P.2d 173, 175 (Wash. 1984) (emphasizing the inclusive ordinary meaning of "any" in "any civil action").

¶ 10. Defendant also argues that construing the exceptions narrowly would lead to irrational and absurd results inconsistent with legislative intent. Specifically, defendant argues that considering the definition and list of exceptions to be exhaustive would lead to such absurd results as classifying a rototiller as a motor vehicle. Defendant relies particularly on our decision in *State v. Tacey*, in which this Court ruled that a broken-down car that was being towed was still a motor vehicle despite being unable to move of its own power. 102 Vt. 439, 439, 150 A. 68, 69 (1930). According to *Tacey*, the Legislature intended the definition of "motor vehicle" to assess the "design, mechanism, and construction of the vehicle, and not its temporary condition." *Id.* at 441, 150 A. at 69. Defendant argues that the "design, mechanism and construction" of the boom lift indicates that it is not a motor vehicle.

¶ 11. While defendant correctly states that statutes must be construed to avoid irrational results and effect legislative intent, these concerns are not implicated in this case. Nor do we have to analyze the statutory language in comparison with every kind of motorized equipment in order to resolve this case. Key features of a boom lift's design are its ability to transport itself and its operator to the proper location at the building site where the lift arm is needed, and its operation from the bucket. Without this transportation function, the lift would be extremely difficult to use because it could not be easily moved to different places at a work site. That the machine travels at a relatively slow speed and is generally driven only relatively short distances is immaterial. Just as the broken-down car in *Tacey* was assessed based upon its design rather than its temporary condition, so should the boom lift be assessed by its capability to be used for motorized transport rather than the frequency of such use in comparison to the lift function.

¶ 12. We cannot separate out the statutory language from the purpose to protect the public. The boom lift may proceed slowly, but it is a large piece of heavy machinery that could inflict personal injury or property damage if it ran into a person or personal or real property. It is not irrational for the Legislature to adopt a broad definition of motor vehicle to ensure that persons or property are not injured or damaged by impaired operators of equipment proceeding on a public highway.

*Reversed.*