2013 VT 48

# Stephanie Lesage, Mary E. McNeil and Richard Mostrom, Colin McNeil, Daniel and Claudia McNeil v. Town of Colchester

## Mary Jane Marchelewicz v. Town of Colchester

### In re Colchester Leased Lands

[81 A.3d 1142]

Nos. 12-196, 12-300 & 12-392

Present: Reiber, C.J., Skoglund and Burgess, JJ., and Bent and Gerety, Supr. JJ., Specially Assigned

Opinion Filed July 5, 2013

Motion for Reargument In Docket No. 2012-392 Denied As Untimely Filed August 26, 2013

*Ian M. DeGalan* and *Brian P. Monaghan* of *Monaghan Safar Dwight PLLC*, Burlington, for Appellant Town of Colchester. (2012-196).

*Peter* and *Stephanie Lesage*, Pro Se, Colchester, Appellees.

*Joseph E. McNeil, Colin K. McNeil* and *Kevin J. Coyle* of *McNeil, Leddy & Sheahan*, Burlington, for Appellees McNeil/ Mostrom, Colin McNeil, Daniel and Claudia McNeil.

*James W. Barlow*, Vermont League of Cities and Towns, Montpelier, for Amicus Curiae Vermont League of Cities and Towns.

*Mark L. Sperry* and *Michele B. Patton* of *Langrock Sperry & Wool, LLP*, Burlington, for Amicus Curiae Coates Island, LLC.

*Brian P. Monaghan* and *Nicholas T. Stanton* of *Monaghan Safar Dwight PLLC*, Burlington, for Appellant Town of Colchester. (2012-300 & 2012-392)

*Liam L. Murphy* and *Damien J. Leonard* of *Murphy Sullivan Kronk*, Burlington, for Appellees Colchester Leased Lands.

*William H. Sorrell*, Attorney General, and *Mary L. Bachman*, Assistant Attorney General, Montpelier, for Amicus Curiae Department of Taxes.

¶ 1. **Skoglund, J.** The common legal issue in these consolidated cases is whether Vermont law allows the Town of Colchester to consider location-related "intangible" factors in assessing seasonal lakefront camps situated on leased land. We conclude that the Town is not precluded from considering such factors in assessing the subject properties. Accordingly, we reverse the decisions of the superior court and state appraiser reaching the opposite conclusion, and we remand the cases for further consideration consistent with our opinion set forth below.

¶ 2. There are two decisions for our review, one by the superior court and one by a state appraiser from the Vermont Division of Property Valuation and Review. As noted, both decisions addressed the Town's authority to factor in intangible factors related to location in assessing lakefront camps situated on leased land. In each of the cases before us, taxpayers own camp buildings on land owned by others who are not parties to these proceedings.

¶ 3. The seed for the instant dispute was planted in 2008 when the Division informed the Town that both its common level of appraisal, which measures assessment equity across towns, and its coefficient of dispersion, which measures assessment equity within

a town, were outside acceptable state parameters, thereby requiring a town-wide reappraisal. The Town completed its reappraisal in 2011. Among the town properties subject to reappraisal were hundreds of seasonal lakefront camps, many of which were located on leased lands.

¶ 4. Upon discovering during the reappraisal process that the camps on leased land were listed on the average at about half their median sale price, the Town determined to reappraise the properties based on the actual sales of comparable properties. The Town's appraisal software broke down the appraised value of the camps into two categories, which the Town labeled "building" value and "land/amenity" value. The Town derived the "building" value by estimating the replacement cost of a new building and then deducting depreciation. The Town calculated the "land/amenity" value by using market data to establish a fixed base value and then adjusting that value depending on a variety of factors related to location, such as proximity to shoreline, views, and quality of beachfront.

¶ 5. Following challenges before the town listers and the Town of Colchester Board of Civil Authority, forty-four camp owners appealed their reappraisal assessments to the superior court. See 32 V.S.A. § 4461(a) (providing that taxpayer aggrieved by decision of town board of civil authority may appeal to either superior court or state appraiser). In an April 2012 summary judgment ruling on those consolidated cases, the court concluded that Vermont law does not give municipalities authority to assess owners of "buildings" on leased land for location-related value attributable to the leasehold rather than the building itself. After denying the Town's motion for reconsideration, the court entered its final judgment in September 2012 ordering the Town to remove the "land/amenity" value from the appraised value for each of the forty-four camps.

¶ 6. Meanwhile, other camp owners appealed to a state appraiser after challenging the Town's assessment first before the town listers and the Board of Civil Authority. Despite finding that the Town had "presented reliable evidence that camps on leased land are selling in the free and open market for a greater amount than the FMV estimate of the camp/buildings themselves," and further that the Town was assessing taxpayers "for the location of a camp/building, not the Leasehold Interest," the state appraiser concluded, similarly to the superior court in the other consolidated

cases, that Vermont law does not authorize the Town to assess camps on leased land for value attributable to location-related factors associated with the land rather than structures on the land.

¶ 7. The Town appeals to this Court. The essence of the Town's argument on appeal is that the decisions of the superior court and state appraiser thwart the letter and purpose of Vermont law to assess all real property uniformly according to its fair market value. The Vermont Department of Taxes and the Vermont League of Cities and Towns have filed briefs as amici curiae in support of the Town's appeal. In addition to echoing the Town's position that fair market value is the touchstone of property tax assessment in Vermont, they warn of far-reaching and potentially unintended consequences should this Court uphold the decisions below.

¶ 8. For their part, taxpayers also warn of negative consequences if the decisions are overturned. They take the position that the Vermont statute allowing towns to assess "buildings" on leased land does not authorize towns to assess those buildings based in part on location-related factors attributable to the land.

¶ 9. ■ The decisions below resolved a pure legal question, which we generally review on a "nondeferential and plenary" basis. *Barnett v. Town of Wolcott*, 2009 VT 32, ¶ 5, 185 Vt. 627, 970 A.2d 1281 (mem.). Although we will uphold "interpretations of statutory provisions by the agency responsible for their administration" absent "compelling indication of error," we must thoroughly review decisions by state appraisers "to ensure that they are supported by findings rationally drawn from the evidence and based on a correct interpretation of the law." *Barrett v. Town of Warren*, 2005 VT 107, ¶ 5, 179 Vt. 134, 892 A.2d 152.

¶ 10. At the heart of the instant controversy is a simple statute, 32 V.S.A. § 3608, that has been part of Vermont law since the end of the nineteenth century. Section 3608 states as follows: "Buildings on leased land or on land not owned by the owner of the buildings shall be set in the list as real estate." Taxpayers insist that this statute means that buildings on leased land must be assessed based only on the value of the structures themselves and not on factors, such as location, typically associated with the land. The superior court and the state appraiser relied on § 3608 to arrive at the same conclusion. We conclude that the court, the state appraiser, and taxpayers read too much into the statute and in particular the word "buildings" contained within the statute.

¶ 11. ▪ "The goal of property-tax appraisal is to ensure that no property owner pays more than his or her fair share of the tax burden; this is accomplished by listing all properties at fair market value." *Barnett*, 2009 VT 32, ¶ 4. Fair market value is "the price which the property will bring in the market when offered for sale and purchased by another." 32 V.S.A. § 3481(1); see *Sondergeld v. Town of Hubbardton*, 150 Vt. 565, 567, 556 A.2d 64, 66 (1988) (stating that "touchstone" of property tax valuation is fair market value as mandated by § 3481).[1] The "most persuasive method" of establishing the fair market value of residential property is "through bona fide sale transactions." *Sondergeld*, 150 Vt. at 567, 556 A.2d at 66.

¶ 12. The Town contends that because its assessments of the subject properties are ultimately based on recent bona fide sale transactions involving comparable properties, the superior court and the state appraiser erred by rejecting those assessments. As noted, the court and state appraiser reduced the Town's assessments of the subject properties by the values representing the intangible location factors attributed to the properties by the Town. While acknowledging that its appraisal software program indicated subcategories of "building" value and "land/amenity" value, the Town argues those program labels do not alter the fact that the subject properties were appraised at fair market value, as required by Vermont law.

¶ 13. Taxpayers acknowledge that if they owned both the buildings and the land upon which the buildings sit, factoring in location as a component of the buildings' fair market value would be entirely appropriate. Indeed, in *Wennar v. Town of Georgia*, 161 Vt. 632, 633, 641 A.2d 101, 101-02 (1994) (mem.), we rejected the taxpayer's argument that the Town erred by basing the fair market value of his lakefront house on the original construction cost plus a time-location factor rather than on the house's replacement value. More specifically, we rejected "taxpayer's as-

---

[1] Under Vermont law, real estate must be set in the grand list at one percent of its "listed value." 32 V.S.A. § 3482. "Listed value," in turn, is equal to one hundred percent of the "appraisal value," *id.* § 3481(2), which means "estimated fair market value" — "the price which the property will bring in the market when offered for sale and purchased by another, taking into consideration all the elements of the availability of the property, its use both potential and prospective, any functional deficiencies, and all other elements such as age and condition which combine to give property a market value." *Id.* § 3481(1).

sertion that a house must be valued the same wherever it is located." *Id.* at 633, 641 A.2d at 101. In so ruling, we cautioned that valuation methodologies were only devices for arriving at fair market value, the ultimate goal of property tax valuation. *Id.* at 633, 641 A.2d at 102. In that case, we upheld the Town's location adjustment factor because "there was evidence that structures on lakefront lots were valued higher than structures elsewhere." *Id.*

¶ 14. Taxpayers argue that *Wennar* does not govern here because, unlike the taxpayer in that case, they do not own the land upon which their buildings are situated. Taxpayers reason as follows. Municipalities may tax only what the Legislature allows them to tax. *Meriwether v. Garrett*, 102 U.S. 472, 501 (1880). Section 3608 allows towns to tax — as real estate — "buildings" on leased land, but the fair market value of buildings separately taxed from the land cannot include valuation related to location, which is most aptly attributable to the land underlying the buildings rather than buildings themselves. We find this reasoning unavailing in that it reads more into § 3608 than its plain meaning and limited purpose.

¶ 15. ▉ Section 3651 of Title 32, which has been in place in one form or another since the eighteenth century, sets forth the general rule as to whom towns may impose property tax. That provision states that "[t]axable real estate shall be set in the list to the last owner or possessor thereof on April 1 in each year in the town . . . where it is situated." 32 V.S.A. § 3651. "By enacting § 3608, the Legislature specifically included buildings on leased land in the definition of taxable real estate, and recognized that a building can be taxed separately from the land upon which it sits." *Gordon v. Town of Morristown*, 2006 VT 94, ¶ 8, 180 Vt. 299, 910 A.2d 836.

¶ 16. ▉ Thus, the provision does not purport to mandate a particular methodology for valuing buildings on leased land, but rather is intended only to authorize towns to assess that type of property as real estate. By requiring that buildings on leased land be set forth in a town's grand list as real estate, § 3608 is aimed at precluding any argument that a building in different ownership from the underlying land must be considered personal property rather than real estate. The Legislature has enacted similar provisions concerning other types of property. See, e.g., 32 V.S.A. § 3602 ("Engines and boilers, electric motors, air compressors,

traveling cranes and machinery, so fitted and attached as to be a part of a manufacturing or other plant and kept and used as such, shall be set in the grand list as real estate."); *id.* § 3602a ("All structures, machinery, poles, wires and fixtures of all kinds and descriptions used in the generation, transmission or distribution of electric power that are so fitted and attached as to be part of the works or facilities used to generate, transmit or distribute electric power shall be set in the grand list as real estate."); *id.* § 3604 ("The interest of a grantee in severance from surface ownership in mines, quarries, or the right of mining and quarrying, shall be set in the grand list as real estate . . . ."); *id.* § 3605 (establishing water rights as real estate to be set in grand list).

¶ 17. ■ When the Legislature has intended to create an exception to assessment at fair market value, it has done so expressly. See, e.g., *id.* § 3607a (providing that barns, silos, and sugarhouses shall be entered into grand list at fair market value unless town elects to exempt, or appraise at less than fair market value, such properties). See generally *id.* §§ 3751-3763 (authorizing use-value appraisal of agricultural and forest lands). If the Legislature had intended a divergence from the general fair-market-value standard for assessing buildings on leased land, it would have explicitly said so. See *State v. Smith*, 2011 VT 83, ¶ 8, 190 Vt. 222, 27 A.3d 362 ("The underlying principle is that if the Legislature made specific exceptions to the applicability of the provision and also wished to include another exception, it would have explicitly stated the additional exception."). Nothing in § 3608 creates an exception to the town listers' duty under § 3481 to list the real estate identified therein — buildings on leased land — at fair market value, which is most persuasively established through comparable sale transactions.

¶ 18. ■ Fair market value "takes into account all the elements of the property's availability, 'its use, potential or prospective, and all other elements . . . which combine to give property a market value.'" *Barrett*, 2005 VT 107, ¶ 6 (quoting *Town of Barnet v. New England Power Co.*, 130 Vt. 407, 411, 296 A.2d 228, 231 (1972)). As this Court declared in *Barrett*, "[a]ll of the elements, tangible and intangible, that combine to give real property fair market value are subject to property tax" as long as "those intangible factors are so 'intimately intertwined' with the real property that the property would not function without them." *Id.* ¶ 11. Hence,

although intangible elements of real property " 'cannot be separately taxed as property,' " such elements " 'may be *reflected* in the valuation of taxable property.' " *Id.* ¶ 9 (quoting *Roehm v. Orange Cty.*, 196 P.2d 550, 554 (Cal. 1948)).

¶ 19. The critical question, then, is whether the intangible location-related factors in this case are "intimately intertwined" with the buildings — and not solely with the underlying leased land — such that the Town may consider those factors in assessing the buildings. In *Barrett*, the issue was whether the state appraiser erred by reducing the Town's assessment of a condominium unit by the value attributable to the unit owner's ownership share of the condominium association's assets. Noting that the unit owner's interest in the association was appurtenant to the real property — unlike the club memberships and ski passes we had rejected as part of the value of real estate in other cases, we held that "the value of that interest may properly be taken into account when determining the real property's fair market value" because the interest was an intrinsic feature of the condominium "positively influenc[ing] the price a buyer is willing to pay for a unit." *Id.* ¶¶ 12-13. Accordingly, we concluded that "[t]he Town complied with the plain language of 32 V.S.A. § 3481 by listing the value of taxpayer's property at its fair market value," and that "[t]he statute does not recognize adjusting the fair market value by the amount of a taxpayer's interest in a condominium owners association." *Id.* ¶ 4.

¶ 20. ▮ We reject in this case taxpayers' reliance on *Barrett* for the proposition that Vermont law does not recognize the Town's attempt to adjust the fair market value of their buildings by adding a value "arising from the favorable location of the underlying land." Here, the location-related factors are plainly "intimately intertwined" with the fair market value of the buildings, as reflected by comparable sale transactions. Indeed, it is hard to imagine any factor more closely tied to the value of a building than its location. Similar to *Barrett*, the land/amenity factor represents a necessary component of each cottage and "positively influences the price a buyer is willing to pay for" the property. *Id.* ¶ 13.

¶ 21. This is true no matter what label is placed on the location-related factors applied by the Town. At various times, these factors have been described either by the Town's appraisal

software, the superior court, or the parties as "land" value, "land/amenity" value, or the value related to a leasehold interest. Specifically, regarding the latter label, the parties have acknowledged that the value could be described as representing, at least in part, the buyer's right to renegotiate the lease on the underlying land or, perhaps most accurately, the seller's agreement to relinquish the current lease.

¶ 22. The leases associated with the subject properties are short-term, generally three to twenty years and not transferable. Normally, a new lease is executed after the sale of a camp, often in a separate transaction. Taxpayers have not presented any evidence of leaseholds purchased along with the camps. The Town's assessments of the subject properties are not based on leasehold contracts, which are rarely reported in the land records. Rather, the Town's assessments are based on comparable sales of camp properties, which may or may not include any specified leasehold interest. Based on these facts, the state appraiser acknowledged in the case before him that the taxpayer "is being assessed for the location of a camp/building, not the Leasehold Interest."

¶ 23. ■ Call it what you may, it is a factor intimately intertwined with the building and its purchase price. As we stated in *Royal Parke Corp. v. Town of Essex*, 145 Vt. 376, 378-79, 488 A.2d 766, 768 (1985) (emphasis added):

> When . . . fair market value can be established by the operation of bona fide sale transactions themselves, a market value is perforce established for appraisal purposes. There is then no need to consider factors useful in trying to estimate market value. So long as the sales evidence proves a transaction between a willing buyer and a willing seller at arms length, entered into in good faith, and not to "rig" a value, *the tax statute is not concerned about the reasons either buyer or seller attributed the agreed value to the property.*

¶ 24. Taxpayers argue, however, that the Town's comparables include more than the value of the buildings and thus are not reliable indicia of the actual fair market value of the subject properties. According to taxpayers, the Town's comparables include the value of other interests in addition to the value of the

buildings, including personal property or short-term leasehold interests in the underlying land.

¶ 25. This is an issue for the superior court and state appraiser on remand. Both the court and the state appraiser based their decisions on their legal conclusion that Vermont law does not permit the Town of Colchester to consider location-related factors in assessing buildings on leased land. We reject that legal conclusion, and remand the matter for the court and state appraiser to reconsider the Town's assessment of the subject cases consistent with our holding in this case that the court may consider location-related factors in arriving at the fair market value of the subject properties. We recognize that the state appraiser has already found "that the Town has presented reliable evidence that camps on leased land are selling in the free and open market for a greater amount than the FMV estimate [referring to the Town's replacement cost component] themselves." Nonetheless, on remand, taxpayers may dispute the Town's comparables, in light of our holding.[2]

¶ 26. Taxpayers suggest that the lack of long-term leases associated with the subject properties reinforces the notion that location-related factors may not add to the value of the camp buildings, as opposed to the underlying leased land. We disagree. The most persuasive evidence of fair market value is what the cottages are selling for, as is, without long-term leases. Even though the landowner could negate the value of a leaseholder's interest by not renewing the lease, the leaseholder must still "pay tax on the full value of the buildings because they have full use of them" in the interim, *Cove Sportsman's Club v. Dep't of Rev.*, 11 Or. Tax. 40, 42-43 (Or. T.C. 1988) — and the market dictates that value. As we stated in *Gordon* in rejecting the argument of the owner of a hangar on leased land that he should not be subject to property taxes because the State could terminate its lease at any time: "While the possibility does exist that at

---

[2] Taxpayers in one of the consolidated cases have filed a motion asking this Court to strike, as irrelevant, any evidence of comparables submitted in the record on appeal. We do not adjudicate the adequacy of the Town's comparables in our resolution of the consolidated appeals, but we nonetheless deny taxpayers' motion insofar as evidence of the comparables was admitted by the state appraiser in the proceedings below. See V.R.A.P. 10(a) (providing that record on appeal shall consist of, among other documents, original papers and exhibits filed in lower court proceedings).

termination of the lease the State could take title to the hangar, that does not alter the undisputed fact that at the present time, and until the State executes its option to claim title, [the hangar's owner] is the title holder for the hanger." 2006 VT 94, ¶ 12.

¶ 27. ■ Nor does 32 V.S.A. § 3610 support the notion, as suggested by the superior court and taxpayers, that owners of buildings with short-term leases on the underlying land should not be assessed for fair market value based in part on location-related factors. This provision requires towns to list perpetual leases as real estate to be taxed to the lessee, with certain exemptions and conditions. See 32 V.S.A. § 3610(a)-(i). The statute is aimed at making owners of perpetual leases of land the effective owners of the property for purposes of taxation — nothing more. It has no bearing on this case, which does not involve perpetual leases. Taxpayers are not the effective owners of the underlying land in these cases, and no one has suggested otherwise. The issue, rather, is whether the Town is authorized to consider location-related factors in arriving at the fair market value of the buildings by using comparable sale transactions. The fact that perpetual leaseholders are also recognized as owners of the underlying land for tax purposes is not relevant in resolving this question.

¶ 28. ■ Taxpayers have also taken up the superior court's position that the leaseholders and owners of the underlying land will work out allocation of the value of location through their negotiated leases. We agree with the Town that this is an example of "the tail wagging the dog." The Town is authorized — indeed compelled — to tax property based on fair market value unless the Legislature has indicated otherwise — which it has not with respect to buildings on leased land. It is the market that determines fair market value. The Town claims that bona fide sale transactions demonstrate that the market has, in effect, allocated location-related value, for the most part, to the camp owners. This is certainly plausible, given that the camp owners are the ones who most directly benefit from that value. In any event, if comparable sale transactions support the Town's determination of the subject property's fair market value, neither the superior court nor the state appraiser may disturb that determination under the assumption that lease negotiations will sort out fair market value.

¶ 29. By the same token, the *Sherburne* cases relied upon by taxpayers do not govern our resolution of these appeals. In

*Sherburne Corp. v. Town of Sherburne*, 124 Vt. 481, 486, 207 A.2d 125, 128 (1965), this Court rejected the Town of Sherburne's attempt to tax ski lifts on land leased to the ski operator by the state under long-term — but not perpetual — leases, holding that the improvements on the leased premises were real property rather than personal property and thus the property of the state for tax purposes. Later the Town of Sherburne attempted to tax 400 of the 2115 acres covered by the lease agreements based on its contention that the ski operator's use and control of those 400 acres was so extensive as to effectively divest the state of its ownership for taxation purposes. The town's position was rejected by this Court. Noting that our taxation system did not support the town's position because the leases were not perpetual, we acknowledged the potential hardship for the town, but stated that "the remedy lies with the Legislature and not this Court." *Sherburne Corp. v. Town of Sherburne*, 145 Vt. 581, 585, 496 A.2d 175, 178 (1985). Neither of these cases apply here, where the parties agree that § 3608 authorizes the Town to tax taxpayers' buildings, and the only issue is whether the Town may consider location-related factors in doing so.

¶ 30. Taxpayers also rely upon several out-of-state cases in defense of the decisions below, but those cases are either distinguishable or unpersuasive. For example, taxpayers cite *In re Reid*, 722 A.2d 489 (N.H. 1998), and *LSP Ass'n v. Town of Gilford*, 702 A.2d 795 (N.H. 1997), two 3-2 decisions by the New Hampshire Supreme Court, to support their argument that the Town may not tax any value of their buildings associated with their leasehold interests. The *Gilford* case concerned taxation of owners of cottages and mobile homes within a commercial lakefront park. In assessing the unit owners' properties, the town added a site-amenity value above and beyond the depreciated value of the physical structures. The court held that the town could tax the site-amenity value because agreements between the unit owners and the park owners' association, which was the titleholder to the underlying land, indicated that the unit owners' interest was "in the nature of a license and . . . not a taxable interest in land." *Gilford*, 702 A.2d at 800.

¶ 31. One year later, citing *Gilford*, the court in *Reid* held that because the leasehold interests of the owners of cottages on land leased by a town entity were not sufficient "to justify a taxable interest in the leaseholds, it follows that a site amenity charge

added to the depreciated cost of their buildings based solely on the value of the underlying land is equally illegal." *Reid*, 722 A.2d at 495. In ruling that the leasehold interests in question were not taxable, however, the *Reid* court relied upon New Hampshire statutory law requiring term-year lease agreements to include a provision for the payment of property taxes, which it found consistent with the general rule that "leaseholds for a term of years are taxable if the lessee consents to be taxed." *Id.* at 494.

¶ 32. Vermont statutes contain no such provision, and thus the New Hampshire cases have little persuasive value. The issue here is whether § 3608, which explicitly authorizes towns to tax buildings on leased land, precludes the towns from considering location-related factors. Because the New Hampshire cases are grounded on distinctive statutory law, they do not inform our decision on this issue.

¶ 33. Taxpayers also rely upon two recent cases from intermediate-level Kansas appellate courts dealing with leasehold interests. See *In re Wine*, 260 P.3d 1234 (Kan. Ct. App. 2011); *In re Lipson*, 238 P.3d 757 (Kan. Ct. App. 2010). Those cases are distinguishable because the leaseholders in both cases owned easily movable mobile homes and because the courts relied upon Kansas law that does not tax divided interests and particularly leasehold interests. See *Wine*, 260 P.3d at 1239-40 (adopting reasoning in *Lipson*, which was based on Kansas law not taxing leasehold interests); *Lipson*, 238 P.3d at 760-61 (explaining statutory scheme that does not tax divided interests and particularly leasehold interests). Similarly, a Connecticut case cited by taxpayers is distinguishable in that its holding was based upon both the town's potential inability to assess the landowner's property at fair market value using only rental income and the absence of statutory law giving towns the authority "to assess a tax against a lessee on the value of the leasehold in excess of the actual rent." See *Sheridan v. Town of Killingly*, 897 A.2d 90, 97 (Conn. 2006).

¶ 34. In contrast, our consolidated cases involve buildings explicitly subject to real estate tax under a statute containing no exception to the general rule that assessments must be based on fair market value as most persuasively shown through bona fide comparable sale transactions. Accordingly, we conclude that because location-related factors are intimately intertwined with taxpayers' camp buildings, the Town may take those factors into consideration to the extent they reflect the fair market value of the properties.

¶ 35. The Town asks this Court to reverse the underlying decisions and set the values of the subject properties as established by the Town's Board of Civil Authority. Both the superior court and the state appraiser in these consolidated cases excised the land/amenity value from the Town's calculation of fair market value, leaving as the fair market value of the subject properties the structural component of value indicated by the Town's appraisal software. Given our decision today allowing the Town to take into account location-related factors in assessing fair market value of the subject properties, we reverse the underlying decisions and remand the matter for the superior court and state appraiser to reconsider the cases in light of our decision. As noted above, the court and state appraiser may reexamine the comparables offered by the Town or taxpayers, but there is no need for new evidence unless the court or state appraiser determines that the passage of time warrants the submission of new evidence.

*Reversed and remanded for further proceedings consistent with this opinion.*